Billie HINCHEY, Plaintiff–Appellant,

v.

Donna SHALALA, Secretary of Health
and Human Services, Defendant–
Appellee.

No. 93–2360.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1994.

Decided July 12, 1994.

Anthony Bartels, Jonesboro, AR, argued, for appellant.

Martin Long, Dallas, TX, argued (Joyce Shatteen, on the brief), for appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and KOPF, District Judge *.

HANSEN, Circuit Judge.

Billie Hinchey appeals the district court's [1] order affirming the Secretary of Health and Human Services' ("the Secretary") denial of her application for Social Security Disability Insurance benefits (SSDI). Hinchey argues that the Secretary erred in concluding that Hinchey retained the ability to return to her past relevant work during the period for which she seeks benefits. We affirm.

## I.

Hinchey applied for SSDI on August 13, 1990. She alleged a disabling heart condition that has prevented her from working since February 1981. It is undisputed that Hinchey last met the threshold earnings eligibility criteria for disability benefits in September 1981 and that she was required to establish the onset of her disability between February 1981 and September 1981 to recover any award of back benefits. The Social Security Administration denied Hinchey's claim both initially and on reconsideration. She requested and received a hearing before an administrative law judge (ALJ) and presented evidence of her medical history and her personal discomfort and restrictions resulting from the heart condition.

In February 1981, Hinchey went to her family physician, Dr. Jacobs, who referred her to Dr. McGrew, a cardiologist, in Memphis. She was admitted to the hospital on February 7, 1981, under Dr. McGrew's care for observation and testing and was discharged on February 16, 1981. On February 18, 1981, Dr. McGrew wrote Dr. Jacobs a letter that detailed the results of the testing and observation and contained a diagnosis and treatment plan. Dr. McGrew noted that upon admission, she had an irregular heartbeat (arrhythmia) but had responded well to medication and was returned back to a normal sinus rhythm. Dr. McGrew characterized Hinchey's condition as rheumatic heart disease related to mitral stenosis, atrial fibrillation, and left ventricular disfunction by echocardiogram. He found her to be a class II cardiac patient, which is a patient "with cardiac disease resulting in slight limitation of physical activity." (Appellee's Br., App. C

---

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Henry L. Jones, United States Magistrate Judge for the Eastern District of Arkansas, presiding by consent of the parties.

at 1.) Dr. McGrew further noted that he did not believe surgery would be necessary and "told her to resume her normal activities within a week or so." (Admin.Tr. at 152.) He also told her to come see him in about a month and recommended a continued medication treatment plan. He specifically wrote to Dr. Jacobs that "I have told her to go ahead with full activity and to see you on a regular basis." (Id.)

Hinchey saw Dr. Jacobs a couple of times in February before returning to Dr. McGrew in March 1981, for an appointment. Dr. McGrew characterized her cardiac status as "completely stable." (Id. at 172.) He noted that she has remained in sinus rhythm since seeing him and reiterated his rating of her as a class II cardiac patient. Dr. McGrew saw her again for a scheduled appointment in April 1981 and found that she was "doing quite well" and classified her as either a class II or class I cardiac patient. A class I cardiac patient has cardiac disease but no resulting limitation of physical activity. (Appellee's Br., App. C at 1.) Dr. McGrew recommended that she continue to see Dr. Jacobs on a regular basis and to see Dr. McGrew again in a year or two.

Hinchey did not seek treatment for her heart condition again until December 1983, when she saw Dr. Jacobs, who again referred her to Dr. McGrew. She again was hospitalized under Dr. McGrew's care for additional observation and testing. Her condition again normalized with some additional care. Her diagnosis remained similar, but Dr. McGrew suggested more regularly scheduled monitoring. She was discharged in mid-January 1984.

Hinchey continued to see Dr. Jacobs on a regular basis for monitoring and reported that she was doing well each time. She had recurring symptoms which required hospitalization and monitoring at times during 1985 and 1986, but with adjustments to her treatment she was returned to sinus rhythm. She continued to see both Dr. Jacobs and Dr. McGrew over the next few years. Dr. McGrew continued to provide reports that ultimately were favorable, indicating her cardiac stability until August 1990, when he reported that she should be considered total-ly and permanently disabled. In January 1991, Dr. Jacobs reported that she had been disabled and unable to work since approximately February 1981. In May 1990, she again visited Dr. McGrew who noted that she was still disabled.

Hinchey testified at the January 24, 1991, hearing before the ALJ that she had worked in a factory and at her husband's pawn shop. She stopped working early in 1981, when she got sick and she has not worked since that time. She said Dr. McGrew told her that she was disabled in 1981.

She testified about her normal daily activities, which included making her bed, dusting, doing her laundry, mopping the floor, driving her car up to six miles, cooking (mostly in crock-pots), and walking up to four blocks on level ground. She testified that she needs to rest often and gets short of breath when doing some of these activities. She has no pain, but suffers from a "draggy" and tired-out feeling. Her husband also testified and corroborated her testimony.

A vocational expert also testified. In response to the ALJ's hypothetical question assuming that she could continue with full and normal activities without restriction, the vocational expert stated that in 1981, she could have performed light work, including work as a store manager or sales clerk. When Hinchey's attorney added to the hypothetical that she would be short of breath and able to work only 15 minutes at a time and have to take a 30-minute break to rest between work periods, the vocational expert stated she would be unable to perform any work with those restrictions.

The ALJ found that Hinchey was not disabled for the purposes of social security disability benefits in 1981 because she had the residual abilities to perform work including her previous work in her husband's business. The ALJ concluded she was not entitled to SSDI benefits prior to the last date she met the special earnings eligibility requirements for the benefits in September 1981. Hinchey requested review of the ALJ's decision before an Administrative Appeals Council. The Council found no basis for changing the ALJ's decision. The Council considered ad-

ditional evidence of Dr. McGrew's reports from 1987 to 1991, which were not presented at the hearing before the ALJ, including his findings in 1990 and 1991 that Hinchey should be considered disabled. The Council specifically found that the evidence did not provide any basis for changing the ALJ's decision.

Hinchey sought review of the Agency's decision in the United States District Court for the Eastern District of Arkansas. The district court affirmed the ALJ's opinion. Hinchey appeals and argues that the ALJ's decision should be reversed because it is not supported by substantial evidence. Alternatively, she argues that we should remand to the ALJ to consider the new evidence she received from Dr. McGrew in May 1993, in which Dr. McGrew states that the ALJ misconstrued his 1981 reports and indicates that Hinchey should be considered "disabled" as of 1981.

## II.

■ There is no dispute that Hinchey last met the special earnings eligibility requirements for SSDI insured status in September 1981. 42 U.S.C. §§ 416(i)(3), 423(c)(1). To receive benefits, she must establish that she was disabled prior to the time her threshold eligibility for insured status expired. *See Battles v. Sullivan,* 902 F.2d 657, 659 (8th Cir.1990). "[T]he relevant analysis is whether the claimant was actually *disabled* prior to the expiration of her insured status." *Potter v. Secretary of Health & Human Services,* 905 F.2d 1346, 1349 (10th Cir.1990).

Here, the ALJ found that although she probably was disabled at the time she applied for benefits in 1990, she was not disabled in 1981, the relevant time for the purposes of her application. The ALJ found that she had the residual ability to return to her former employment as a clerk in her husband's pawn shop business. Accordingly, the ALJ denied benefits.

Our review of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the Secretary's decision. This requires us to do more than merely parse the record for substantial evidence supporting the Secretary's decision. We also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

*Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992) (internal citations omitted). The focal point of our inquiry then is whether there is substantial evidence in the record to support the ALJ's conclusion that she retained the residual capacity to perform her previous work.

■ In finding that Hinchey retained the residual ability to work at all levels, the ALJ gave "great weight" to Dr. McGrew's 1981 analyses of her condition. (Admin.Tr. at 19.) In particular, the ALJ attached great importance to Dr. McGrew's statements in his February 18, 1981, letter to Dr. Jacobs that he considered her disabled for one week and that she could then return to normal and full activities. The ALJ also noted that Dr. McGrew's reports during the remainder of 1981 indicated that her progress was good, that her condition was under control, and that he actually improved the grade of her cardiac condition from a solid class II to a class I or class II. The ALJ also noted that after 1981, she went nearly two years without seeking cardiac care, and that prior to 1981, her medical records did not demonstrate frequent or significant impairment that would constitute a disability. We conclude that the evidence the ALJ relied upon constitutes substantial evidence to support the finding of no disability.

■ Hinchey argues that the ALJ should have given more credit to Dr. Jacobs' opinion that Hinchey was disabled in 1981. She contends that the ALJ erred by explicitly giving greater weight to the opinion of Dr. McGrew because he is a specialist in cardiology than to the opinion of Dr. Jacobs who is a family practitioner. She argues that specialization is not a prerequisite to giving a medical opinion and that Dr. Jacobs was more familiar with her conditions and, therefore, that his opinion should have been given greater weight.

While both Dr. Jacobs and Dr. McGrew acted as treating physicians for Hinchey, the record is quite unambiguous that Dr. McGrew actually diagnosed Hinchey and assigned treatment for her condition. As such, he could properly be considered the treating physician for her cardiac condition. Given the fact that, at a minimum, Dr. McGrew is at least one of two treating physicians, the court committed no error in giving greater weight to his expertise. The Secretary's regulations for evaluating medical opinions specify, "We generally give greater weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5). We conclude that the ALJ committed no error in giving greater weight to the opinions of Dr. McGrew as the treating specialist in this case.

■ Hinchey next argues that the ALJ erred in failing to give credit to her subjective complaints of disabling fatigue. Under *Polaski v. Heckler,* 751 F.2d 943, 948 (8th Cir.1984) (subsequent history omitted), the ALJ must carefully consider subjective complaints of disabling pain and may discount such complaints only if they are inconsistent with the record as a whole. Hinchey stated that she had no pain but had a "draggy feeling" and lacked energy. Hinchey, however, never testified about any disabling fatigue in 1981. Instead, she discussed her normal daily routine as it presently existed at the time of the hearing in 1991. (Admin.Tr. at 43–47.) Likewise, she discussed only her current problems with shortness of breath and lack of energy. (*Id.*) The ALJ nonetheless considered her statements as if they pertained to 1981 and went on to reject her allegation of disabling fatigue as inconsistent with her daily activities, with her medical records from 1981, and thus with the record as a whole. The ALJ specifically concluded that her medical impairments that existed during 1981 were treated successfully in 1981 and that she was returned to normal and full activity without a prolonged period of inability to work. After reviewing the record, we conclude the ALJ committed no error in rejecting her subjective complaints of fatigue

as being inconsistent with her medical records and the record as a whole.

■ Hinchey next argues that the ALJ erred in relying on the vocational expert's opinion that she could perform light work like her past relevant work because the opinion was given in response to an incomplete hypothetical question from the ALJ. Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision. *Rappoport v. Sullivan,* 942 F.2d 1320, 1323 (8th Cir.1991). Hinchey claims that the hypothetical failed to include her shortness of breath and tired feelings and that, as such, the vocational expert's answer cannot be substantial evidence. We disagree.

■ The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole. *Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir.1993). As noted above, the ALJ found that her subjective complaints of fatigue were not supported by the record as a whole. Hence, he did not need to include those factors in the hypothetical to the vocational expert.

Hinchey's final argument is that the case should be remanded to the Secretary to consider as additional evidence the letter she received from Dr. McGrew following the ALJ's decision. Dr. McGrew stated that he believes that the ALJ misconstrued some of his statements about Hinchey's condition in 1981. He specifically indicated he thinks "she should be considered disabled from before September 30, 1981" and that he does "not believe she could have performed substantial gainful employment prior to February of 1981."

Congress has given us the authority "to order the Secretary to consider additional evidence, but 'only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence in the record in a prior proceeding.'" *Woolf v. Shalala,* 3 F.3d 1210, 1215 (8th Cir.1993) (quoting 42 U.S.C. § 405(g)). "To be material, new evidence

must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which the benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination." *Id.*

■ We need not determine whether the additional evidence is material here because we find that Hinchey has not shown good cause for failing to incorporate such evidence in the record earlier in this proceeding. Good cause is lacking because Hinchey had the opportunity to obtain this information from Dr. McGrew before the administrative record was closed but failed to do so without providing a sufficient explanation. *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993). The ALJ specifically addressed this subject during the hearing. The ALJ offered to keep the record open to allow Hinchey to get more information on the disability as of 1981. (Admin.Tr. at 48.) Hinchey's attorney stated that he would get some more information from her doctors saying "that she couldn't have worked back then." (*Id.* at 49–50.) The ALJ said "whatever you want to do." (*Id.* at 50.) Hinchey's attorney specifically stated that he would write Dr. McGrew and ask him to clarify his statements in his 1981 records, and the ALJ responded "okay." (*Id.* at 51.) The hearing was held in January 1991. The ALJ did not rule until June 1991. Hinchey waited until almost two years after the ALJ's decision to obtain Dr. McGrew's letter in May 1993. Hinchey's assertion that she could not have foreseen the need for the clarifying report until such a late date is simply not supported by the record. Under these circumstances, there is no good cause for the delay. *See Smith*, 987 F.2d at 1375.

### III.

The judgment of the district court is affirmed. Hinchey's motion for remand is denied.