_____

No. 95-3334
_____

Ralph R. Cruze,                              *
                                             *
          Appellant,                         *
                                             *   Appeal from the United States
     v.                                      *   District Court for the
                                             *   Southern District of Iowa.
Shirley S. Chater, Commissioner              *
of Social Security,                          *
                                             *
          Appellee.                          *

_____

Submitted:  March 15, 1996

Filed:  June 7, 1996
_____

Before MAGILL, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MAGILL, Circuit Judge.

     Ralph Cruze appeals from the district court's[1] order affirming the
Secretary of Health and Human Services' denial of disability benefits under
Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (1994).  In
denying benefits, the administrative law judge (ALJ) found that although
Cruze could not return to his past work, he could obtain gainful
employment.  Because this decision is supported by substantial evidence,
we affirm.

_____

     [1]The Honorable Charles R. Wolle, United States District Judge
for the Southern District of Iowa.

## I.

At the time he applied for disability benefits on March 29, 1993, Cruze was fifty-one years old and had worked as a maintenance electrician at the Dial Corporation in Fort Madison, Iowa, for the past fifteen years. In his application, Cruze stated that he was disabled due to heart problems. In September 1992, Cruze had suffered a heart attack, for which he was hospitalized. A cardiac catheterization showed lesioning of several of the blood vessels surrounding Cruze's heart. Cruze was again admitted to the hospital on January 25, 1993, this time for light-headedness. Cardiac testing revealed atrial tachyrhythmia, which responded well to cardiac electrical stimulation. Finally, in March 1993, Cruze underwent a quadruple coronary artery bypass operation to combat three-vessel coronary artery disease.

The Secretary denied Cruze's application initially and on reconsideration because Cruze's condition did not meet the statutory definition for disability. Cruze sought a hearing before an ALJ, which was held on April 11, 1994. At the hearing, the ALJ heard medical evidence from Dr. Austin, Cruze's treating physician, and from Dr. Nichols and Dr. Minks, consulting physicians. Cruze also testified as to his subjective accounts of pain and his daily living activities.

After the hearing, the ALJ evaluated Cruze's claim according to the five-step analysis prescribed by Social Security Administration Regulations. See 20 C.F.R. § 404.1520(b)-(f) (1993). The ALJ found at the first step that Cruze was not currently working, at the second step that Cruze had a severe impairment, at the third step that Cruze's impairment did not meet or equal a listed impairment presumed to be disabling, and at the fourth step that Cruze's impairment prevented him from doing his past relevant work as a maintenance engineer.

After the claimant has shown that he is precluded from doing past relevant work, at step five of the analysis the burden shifts to the Secretary to demonstrate that the claimant possesses the residual functional capacity to perform jobs that exist in the national economy. See Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991). Based on the medical testimony presented at the hearing, as well as Cruze's testimony, the ALJ concluded that Cruze possessed the residual functional capacity

> to perform the physical exertional and nonexertional requirements of work except for lifting and carrying of more than 20 pounds occasionally or 10 pounds frequently; more than occasional stooping, kneeling, crawling, crouching, climbing, or balancing; exposure to concentrations of heat, humidity, or cold; or work which involves more than low to moderate levels of stress.

Decision at 13. The ALJ posed a hypothetical question incorporating these limitations to Leona Martin, a vocational expert (VE), who replied that Cruze could still perform work as a light cleaner, office helper or messenger, or mail clerk. The VE further testified that these positions exist in significant numbers in the national economy.

Based on the response given by the VE, the ALJ denied Cruze's application for benefits. The denial was upheld by the district court, and this appeal followed.

## II.

We must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence "is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993). Thus, "[w]e do not reweigh the evidence or review the factual record de novo." Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994). Rather, "if it is

possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision." Oberst, 2 F.3d at 250 (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)).

Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence. See Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993) (per curiam); cf. Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question need "include only those impairments that the ALJ finds are substantially supported by the record as a whole." Id. (citing Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)); see also Morse v. Shalala, 32 F.3d 1228, 1230 (8th Cir. 1994).

Cruze challenges the ALJ's determination that he does not suffer from a walking or standing limitation. Cruze contends that the evidence of his cardiac problems[2] demonstrates that he does suffer from this limitation, and thus the hypothetical was incomplete for not including this impairment. Cruze also challenges the ALJ's description of his lifting and carrying limitations. We conclude that the ALJ's impairment determination was supported by substantial evidence, and that the hypothetical

---

[2]Although Cruze also suffered from rheumatoid arthritis and from a tear of the medial meniscus, the ALJ noted that no evidence was presented that the arthritis was in an active stage, and the record did not contain any evidence about persistent joint pain, swelling, and tenderness of major joints. Further, Dr. Austin's physical examination revealed only minor limitations in the range of motion of Cruze's knees and other joints. Because the hypothetical question given to the VE incorporated limitations in stooping, crawling, and the like, and because Cruze has not contended on appeal that the ALJ overlooked this evidence in formulating the hypothetical, we will confine our discussion to the cardiac problems.

question was therefore accurate and complete.

**A.**

The evidence concerning whether Cruze suffered from a standing or walking limitation can be broadly broken down into three categories: (1) testimony from Drs. Nichols and Minks, based on objective medical evidence, who concluded that Cruze did not suffer from such a limitation; (2) evidence of Cruze's daily living activities, which likewise supports the ALJ's decision; and (3) evidence detracting from the ALJ's decision, including testimony from Dr. Austin and from Cruze.

**1. Dr. Nichols' and Dr. Minks' Assessments**

Dr. Nichols and Dr. Minks concluded that Cruze did not suffer from a walking or standing limitation. They based their assessments on a review of the objective medical findings of Dr. Austin.

Cruze underwent three successful treadmill tests,[3] in November 1992 (exercise time of eleven minutes and twenty seconds), February 1993 (exercise time of fourteen minutes and thirty-four seconds), and July 1993 (exercise time of twelve minutes and seventeen seconds). Cruze reached his target heart rate on all three tests. After each test, Dr. Austin concluded that Cruze tested negative for both chest pain and arrhythmia.

Evidence of ischemia, on the other hand, was mixed. The

---

[3]Cruze underwent a fourth treadmill test, shortly after his hospitalization in January 1993, that was aborted upon development of premature ventricular contractions. However, after the test, Dr. Austin noted that Cruze's heart rhythm was "stable . . . for normal activities." At this time, there was no evidence of any active cardiovascular or pulmonary disease.

November and February tests were positive for ischemia (the November test only weakly so). However, in February, despite the positive test for ischemia, Dr. Austin concluded that Cruze's achieved energy levels would qualify him to work, although the results were not sufficient enough for Cruze to return to his prior job.

Cruze demonstrated remarkable improvement on the July test. While he had some postoperational pain, he experienced only mild to moderate shortness of breath, no faint-headedness, and no leg cramps. Significantly, the test was negative for ischemia as well as chest pain and arrhythmia.

Dr. Nichols, after reviewing these objective medical findings, concluded that Cruze could walk or stand for approximately six hours out of an eight-hour day, and that Cruze could sit for at least six hours in a day.[4] Dr. Nichols noted that while Cruze had small areas of ischemia, the July 1993 treadmill test was negative for ischemia at 8.6 METS, and that in September, Cruze's gait was normal. Thus, Dr. Nichols determined that Cruze's cardiac problems do not disable him; rather, they merely limit him to light work.

Dr. Minks came to a conclusion similar to that of Dr. Nichols. After reviewing the file in July 1993, Dr. Minks noted that Cruze "has no limitations in standing, sitting, pushing, pulling, or the use of hand or foot controls."[5] Tr. at 276. Dr. Minks further noted that, as of July 1993, Cruze was "really not disabled at present," id.; however, he deferred to Cruze's treating physician's view that Cruze should restrict his activities.

---

[4]This conclusion, if accepted by the ALJ, meets the threshold for light work, which is defined as work that "requires a good deal of walking or standing [or] involves sitting most of the time with some pushing or pulling of arm and leg controls." 20 C.F.R. § 1567(b); see also Naber, 22 F.3d at 189.

[5]Dr. Minks did not assess Cruze's walking ability.

## 2. Cruze's Daily Activities

The diagnoses of Dr. Nichols and Dr. Minks are fully supported in the record by evidence of Cruze's therapy and daily activities. Before his operation in March 1993, Cruze regularly drove a car, performed light housework, and visited friends daily at a coffee shop. After the March operation, Cruze participated in cardiac rehabilitation and education. At therapy, he was able to walk independently for 800 feet and climb three steps at a time. Therapy goals were noted to have been met.

Less than six months later, in August 1993, Cruze was engaged in an active lifestyle, including mowing his lawn; shopping in town, usually once or twice a week for two to three hours per trip; visiting with friends; caring for a number of farm animals such as cows and chickens, which entailed lifting and carrying ten-pound feed buckets to the animals; and performing odd jobs such as building birdcages and welding for himself and for his neighbors. Such activities tend to prove that Cruze is able to work. Naber, 22 F.3d at 188 (complainant's desire to work part-time on his brother's ranch or in a paintshop or woodshop "tends to prove" that the complainant was able to work).

Third, Cruze himself admitted that he was not completely disabled. In a March 1994 pain questionnaire, Cruze admitted that he could stand, walk, climb stairs, kneel, drive, lift and carry light things, reach and handle things, grip, bend over, and crawl. Although Cruze imposed a half-hour limitation for these activities, we find such a limitation belied by his recreational activities, which often included a three-hour walk around town with friends.

## 3. Evidence Demonstrating Disability

Cruze contends that, despite all of the evidence demonstrating that he did not suffer from a walking or standing limitation, the

-7-

ALJ erred in not crediting Dr. Austin's conclusion that any significant degree of walking about, particularly if this involved stairs, would put Cruze's cardiac status at risk. Although "a treating physician's opinion is generally entitled to substantial weight," Davis v. Shalala, 31 F.3d 753, 756 (8th Cir. 1994), such opinion "does not automatically control, since the record must be evaluated as a whole," Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). Further, where the treating physician's opinions are themselves inconsistent, they should be accorded less deference. Id.; cf. Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996) (in ERISA disability cases, when a doctor offers inconsistent opinions, less weight should be afforded that opinion).

Dr. Austin's opinions have largely been inconsistent and are not fully supported by the objective medical evidence. After the February treadmill test, which was positive for ischemia, Dr. Austin stated that Cruze could return to work, just not at his old job at Dial. After this positive evaluation, Cruze's condition improved further, as evidenced by the July treadmill exam. If (1) Cruze could return to some work in February, despite the presence of ischemia, and (2) Cruze's condition improved throughout the year, then we find it difficult to accept Dr. Austin's September decision that Cruze's cardiac status suddenly put him at risk to return to any work.

At a September 1993 disability hearing, Dr. Austin noted that "[s]tanding, moving about, walking and sitting in an 8 hour work day would be difficult to assess." Tr. at 281. He then reversed course and, disregarding the results of the February and July treadmill tests, he asserted that any significant amount of walking would put Cruze at risk. This opinion is not supported by "medically acceptable clinical or diagnostic data" and thus the ALJ was not bound by it. Davis, 31 F.3d at 756.

Cruze also points out that Dr. Austin twice concluded that,

given Cruze's job requirements at Dial, Cruze qualified for disability benefits under Iowa law.  The ALJ properly disregarded this conclusion. First, whether or not Cruze was disabled under Iowa law is not binding on the Commissioner of Social Security.  See 20 C.F.R. § 404.1504.  Second, statements that a claimant could not be gainfully employed "are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Secretary."  Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991).  Such statements simply "are not conclusive as to the ultimate question" of disability.  Id. at 1316-17.  To the extent that Dr. Austin's opinion was a medical opinion, we note that whenever he labelled Cruze as disabled, it was in reference to Cruze's former job at Dial; Dr. Austin never stated that Cruze was prevented from carrying on all labor.  The statements have little bearing on Cruze's residual functional capacity.

Cruze's subjective complaints of pain and light-headedness[6] when walking and working were also properly disregarded by the ALJ.  When reviewing subjective complaints of pain, an ALJ cannot disregard them unless they are not supported by the record as a whole.  See Naber, 22 F.3d at 188.  In this case, the ALJ disregarded the subjective complaints of pain and light-headedness because they conflicted with the evidence concerning Cruze's daily activities, such as caring for a number of farm animals and weekly three-hour visits to town.  Further, the medical evidence belies Cruze's testimony--during the July treadmill exam, Cruze suffered only mild to moderate shortness of breath, no faint-headedness, and no leg cramps.  We find no error here.

---

[6]In an August 1993 pain questionnaire, Cruze stated that he could walk less than a full block before he became tired and needed to rest.  Cruze's friend, Betty Clementson, reiterated this at the hearing, noting that Cruze could not walk for long periods of time before becoming light-headed and needing rest.  In a later questionnaire, dated November 17, 1993, Cruze noted that when working on a project, he could only pound around three nails before needing to rest due to numbness in his hand.

Under the substantial evidence standard, we cannot say that the ALJ erred in concluding that Cruze did not have a standing or walking limitation. This conclusion was supported by the medical opinions of two consulting physicians and by evidence of Cruze's daily activities. Against this, Cruze offers only the inconsistent statements of his treating physician and his own subjective assessments. It was therefore proper for the ALJ to not include a standing or walking limitation in the hypothetical question given to the VE.

**B.**

The ALJ's determination that Cruze could lift ten pounds frequently, and twenty pounds on occasion, is likewise supported by substantial evidence. Upon reviewing the record, Dr. Nichols concluded that this was the proper lifting limit for Cruze. Dr. Austin's testimony that Cruze could not "lift any more than 5 or 10 lbs. with any degree of frequency," Tr. at 281, is not to the contrary, because the ALJ determined that Cruze could lift more than ten pounds only "occasionally." Further, Dr. Minks concluded in July 1993 that by January 1994, Cruze "should be capable of at least 50 pounds occasionally, 25 pounds frequently." Tr. at 276.

Cruze himself admitted to carrying ten-pound feed buckets to his cows on a regular basis. He also noted, in an August 1993 pain questionnaire, that he could carry up to fifty pounds (for a distance of four feet), but that his doctors had advised him to carry no greater than twenty-five pounds. That Cruze's doctors limited him to carrying twenty-five pounds suggests that Cruze would be able to carry twenty pounds on an occasional basis.

We conclude that the lifting and carrying weight restrictions in the hypothetical have substantial support in the record. Because the hypothetical given to the VE corresponded to the impairments as determined by the ALJ, the hypothetical given to the

VE was proper.  The VE's response, that Cruze would be able to perform jobs that existed in the national economy in significant numbers, amounts to substantial evidence supporting the ALJ's decision.  See Miller, 8 F.3d at 613.

## III.

Based on the record as a whole, substantial evidence supports the ALJ's decision denying benefits to Cruze.  Accordingly, we affirm.

HEANEY, Circuit Judge, dissenting.

The record fully supports Cruze's contention that he is entitled to disability benefits as of January 1, 1993.  Contrary to the majority's characterization, the record provides ample evidence that Cruze has difficulty standing or walking for prolonged periods of time.  Yet, the ALJ ignored this evidence when he posed the hypothetical of limitations to the vocational expert.  The ALJ similarly erred in concluding that Cruze could perform light work.  As defined by the regulations, light work "requires a good deal of walking or standing." 20 C.F.R. § 1567(b).  As the evidence in the record demonstrates, Cruze is unable to perform light work on a full-time basis.  Thus, I respectfully dissent from the majority and would reverse the ALJ's denial of disability benefits.

Dr. Austin, Cruze's treating physician, personally examined Cruze on several occasions and monitored his heart condition periodically.  He stated that any significant degree of standing or walking would put Cruze's cardiac status at risk.  Tr. at 280.  This evidence alone is sufficient to require a finding of disability.  The ALJ and the majority discredit Austin's disability evaluation, however, largely because they consider it "inconsistent" with his earlier evaluations.  The majority argues that, based on the results of the treadmill tests in February and

July 1993, Austin had reported an improvement in Cruze's condition and that therefore his September disability evaluation is "difficult to accept."

Dr. Austin's opinions are consistent and the majority is grasping at straws to characterize them to the contrary. As evidenced by his quadruple coronary bypass operation in March of 1993, Cruze's cardiac condition clearly did not improve from February to March. Moreover, although the July treadmill test was negative for ischemia, Dr. Austin noted that interpretation of ischemia on that test was difficult due to the changes on Cruze's EKG. A subsequent Thallium report revealed that Cruze's ischemia "worsened in appearance and increased in size" since his February examination. Tr. at 220. It also stated that Cruze's defect in his left ventricle had increased in size since the earlier examination. Id. Thus, Dr. Austin's opinion, consistent with his earlier evaluations, should be accorded the substantial weight to which a treating physician's opinions generally are entitled. See Davis v. Shalala, 31 F.3d 753, 756 (8th Cir. 1994).

The ALJ also should not have summarily rejected Dr. Austin's statement that Cruze is disabled under Iowa law. If Dr. Austin had been referring to a standard other than that appropriate in Social Security disability cases, the ALJ might have had a point. Dr. Austin's statement, however, was addressed to the Iowa state office that makes the initial disability determinations for the Social Security Administration. His reference to Iowa law was therefore appropriate and should be credited accordingly.

Moreover, the majority's wholesale reliance on the assessments of Drs. Minks and Nichols is misplaced. Neither doctor, retained by the Social Security Administration as consulting physicians, has ever personally examined Cruze. Both based their opinions solely on Cruze's medical records. Dr. Nichols did not even go to the trouble of preparing a narrative report. He simply checked a

-12-

number of blanks in a form provided to him by the Social Security Administration.  Dr. Minks expressed no opinion as to Cruze's walking limitations.  Rather, he stated that Cruze has "no limitations in standing, sitting, pushing, pulling, or the use of hand or foot controls."  Tr. at 276.  No one disagrees with that assessment, but the relevant inquiry is whether Cruze is able to do the walking that is required for light work on a full-time basis.  Most importantly, it is the responsibility of the ALJ to fully develop the record.  If he found that there were inconsistencies in the opinions of the treating physician and the consulting physicians, he should have made further inquiry at the hearing to resolve the matter.

Finally, the ALJ and the majority have exaggerated the extent of Cruze's daily activities.  According to the testimony of both Cruze and his housemate, Betty Clementson, Cruze's activity is quite limited.  The ALJ found that Cruze "was mowing his lawn, shopping, and caring for a number of farm and domestic animals" and concluded, "[e]vidently, he can perform all activities necessary to maintain his nine-acre home place."  Tr. at 23-24.  Such findings disregard Cruze's testimony that the only mowing he does is on a rider mower and that it is limited to ten minutes at a time.  Tr. at 47-48.  He also testified that Ms. Clementson does the majority of the household and farm chores and that his neighbor feeds his cattle for him once a day.  Tr. at 49, 52.  The majority similarly distorts Cruze's recreational activities, stating that they "often included a three-hour walk around town with friends."  Ms. Clementson testified that she and Cruze sometimes go shopping and out to eat on the weekends and that the entire trip would last, at a maximum, three hours.  Tr. at 70.  Nowhere in the record is there support for the view that Cruze is able to walk around town for three hours.  Rather, he testified that he experiences shortness of breath and dizziness after walking for even a short period of time.  Tr. at 43.  Cruze's daily activities include only light farm chores and housekeeping, occasional shopping and carpentry, and visiting

with friends and neighbors.

Neither the medical opinions nor Cruze's daily activities support the ALJ's conclusion that Cruze is able to perform full-time work that requires significant walking or standing.  See McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (claimant must be able to perform the work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.") (en banc).  It is conceded that Cruze was not able to return to his past work.  Thus, the burden was clearly on the Secretary to establish that Cruze could perform light work in accordance with the requirements of McCoy.  She failed to carry her burden.

Cruze is entitled to disability benefits beginning January 1, 1993. In the alternative, the matter could be remanded to the ALJ to resolve the conflict between the treating physician and the consulting physicians and then to pose an appropriate hypothetical to the vocational expert.  The majority, however, rejects even that approach.  I therefore dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-