No. 96-1982

Damian Flynn,                          *
                                       *
       Appellant,               *
                                       *
v.                                     *      Appeal from the United States
                                       *      District Court for the Southern
Shirley S. Chater,                     *      District of Iowa
Commissioner of Social                 *
Security,                              *
                                       *
       Appellee.                       *


                Submitted: December 13, 1996

                Filed:  February 27, 1997


Before BOWMAN, Circuit Judge, LAY, Senior Circuit Judge, and STROM,[*] Senior
District Judge.

STROM, District Judge.


       Flynn appeals the district court's[1] decision granting the defendant's
motion for an order affirming the Commissioner of the Social Security
Administration's decision denying him disability benefits.  We affirm.

       *The Honorable Lyle E. Strom, United States Senior District
Judge for the District of Nebraska, sitting by designation.

       [1]The Honorable Charles R. Wolle, United States District
Judge for the Southern District of Iowa.

**I.**

Claimant Damian Flynn was born March 29, 1974.  On August 27, 1978, he was hit by a car and hospitalized.  Flynn sustained a head injury, and at first, doctors thought he did not suffer permanent injuries.  However, doctors advised Flynn to return for follow-up checkups because of the nature of the accident.

About a year after the accident, Flynn began complaining about pain in his calf.  Since then, Flynn has suffered from sporadic pain in his foot, ankle, leg, hip, back, and neck.  He also has a leg-length discrepancy. Admin. Tr. at 150.  Flynn, though, does not take medication for these physical impairments, and he is not presently receiving any medical treatment for these impairments.

In addition to these physical impairments, Flynn has a learning disability.  Admin. Tr. at 191; but see id. at 275 (suggesting that Flynn does not have a learning disability but rather he has long-term consequences from his head injury).  During his school career, Flynn has had difficulty with reading, writing, and arithmetic, and was placed in special education classes.  See id. at 153, 160-61, 250.  Flynn eventually dropped out of school when he was in the tenth grade.  Id. at 59.

The record is consistent as to the extent of Flynn's learning impairments.  Tests throughout the years have shown that Flynn scores poorly on auditory memory and association tests.  Id. at 190; see also id. at 153-54, 238.  These test scores explain Flynn's problems with reading, writing, and arithmetic.

In addition to scoring low on certain tests, and having problems with reading and writing, Flynn scores low on timed tasks, id. at 165, and has difficulty following more than two verbal

directions at a time.  Id. at 61-62, 243.  At least one doctor has concluded that Flynn has poor executive ability, bad adaptability, and slow mental processing speed.  Id. at 275.  Finally, in social settings, Flynn tends to be a loner with low self-confidence.  Id. at 273.  He also lacks certain social skills.  Id. at 191.

A review of the record, however, is not complete without noting that Flynn is an intelligent young man with specific talents and skills.  For example, he has an above average IQ, and he scores very high on tests that measure visual and creative abilities.  Id. at 164, 166, 238.  As a child, he had a very good vocabulary, id. at 244, and good comprehension skills.  Id. at 250.  Furthermore, Flynn is a talented artist who is aware that there is at least a small market for his work.  Id. at 65-66, 272.

Throughout the years, evaluating psychologists and teachers have noted that Flynn works diligently on tasks that interest him, and becomes frustrated at tasks that are more difficult for him.  Id. at 160.  At times, teachers have described Flynn as "lazy and not motivated."  Id. at 160; see also id. at 184.  Teachers also have attributed part of Flynn's learning problems in school to his poor attendance record.  Id. at 185, 187.

Since quitting school, Flynn has started working on his GED.  Id. at 60.  In his free time, he reads comic books and TV Guide, but with difficulty.  Id. at 38-39.  He also watches television, draws pictures, and visits his friends.  He often meets his friends downtown by taking a bus.  While at first he has difficulty getting around a new city using public transportation, after he learns the routes, he has little difficulty.  Id. at 67.  He also knows how to read bus maps and timetables.  Id. at 44-45.  At home, Flynn performs household chores such as vacuuming, cooking, taking out

the garbage, mowing the lawn, and taking care of his cat.  Id. at 46, 53, 62.

Against this background, Flynn's mother initially filed a child's supplement security income (SSI) claim on his behalf on March 19, 1980. The agency denied the application.  Flynn's mother subsequently filed a second application on October 2, 1985.  This time, the agency approved benefits through March 1986 at which time the agency terminated Flynn's benefits because of his mother's excess income.

The instant case began when Flynn's mother filed a third application on July 22, 1987.  The agency denied this application; however, the case was reopened after the Supreme Court modified the analysis required to determine whether a child is disabled.  Subsequently, Flynn filed a new application for benefits as an adult on January 27, 1993.  The Administrative Law Judge (ALJ) considered the two pending applications and denied benefits.  The Appeals Council denied review on January 9, 1994. The district court affirmed, and Flynn filed this appeal.

We review the ALJ's decision in which he found that Flynn was not disabled as a child and was not disabled as an adult.  Pursuant to 20 C.F.R. § 416.924, the ALJ found that Flynn had severe impairments but that they were not comparable to those which would have disabled an adult. Accordingly, the ALJ found that Flynn was not disabled as a child.  Next, the ALJ considered whether Flynn was disabled as an adult.  Pursuant to 20 C.F.R. § 416.920, the ALJ again found that Flynn's impairments were severe. The ALJ then found that Flynn's impairments did not meet or equal the criteria of any impairment listed in Appendix 1.  The ALJ next found that Flynn had no past relevant work, and, therefore, he had to

-4-

determine whether Flynn's impairments prevented him from doing any other work. The ALJ concluded that Flynn could perform work found in the national economy, and that Flynn's main problem was that he was not motivated. Accordingly, the ALJ found that Flynn was not disabled as an adult.

## II.

In reviewing the decision of the ALJ, we must affirm if it is supported by substantial evidence based on the record as a whole. Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994); see also 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993). Therefore, "[w]e do not reweigh the evidence or review the factual record de novo." Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994)(citation omitted). Rather, "'if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision.'" Oberst, 2 F.3d at 250 (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)).

## A.

On appeal, Flynn makes four arguments. First, Flynn contends that the ALJ failed to make specific findings of fact regarding claimant's impairments.

Flynn concedes he raises this issue for the first time on appeal. Ordinarily, issues raised for the first time on appeal will not be considered unless the claimant can show that manifest injustice would otherwise result. See Misner v. Chater, 79 F.3d 745, 746 (8th Cir. 1996)(citing Novotny v. Chater, 72 F.3d 669, 670 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir.

1993)). Flynn has not made this showing. However, even if we considered the merits of Flynn's argument, we would not disturb the ALJ's decision, as his findings of fact are adequately set forth in his decision. Admin. Tr. 20-22. Therefore, we find Flynn's first argument to be without merit.

**B.**

Flynn's second argument is that the ALJ failed to include all of Flynn's impairments in questioning the vocational expert. Again, we disagree.

A vocational expert's testimony "based on a properly-phrased hypothetical question constitutes substantial evidence." See Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996)(citations omitted). In contrast, a hypothetical question that does not take into account all relevant impairments does not constitute substantial evidence to support the ALJ's decision. See Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994)(citation omitted). Finally, a properly-phrased hypothetical question only has to include those impairments that the ALJ finds are substantially supported by the record as a whole. Id. (citation omitted).

In this case, the ALJ's hypothetical question to the vocational expert only included those impairments that the ALJ accepted as true. The ALJ found that many of Flynn's problems were due to a lack of motivation. Admin. Tr. at 20 (stating Flynn "engages in any number of activities and presents more as an idle teen rather than a young man with any real disability"). Furthermore, the ALJ concluded that Flynn did not present any evidence to show that the lack of motivation was related to a disabling mental impairment. Id. Significantly, other than pointing to Dr. Gersh's report, Flynn presents little evidence to

-6-

connect his lack of motivation to any disabling impairment.  Therefore, it was not error for the ALJ to limit his hypothetical question to only those impairments which he accepted as true.

## C.

Flynn's third argument is that the ALJ improperly applied the <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984), credibility analysis to this case.  In a nutshell, Flynn argues that "[t]he ALJ found that the testimony regarding daily activities was credible.  His rejection of his disability claim was therefore erroneous."  Br. of Appellant at 19.

Although the ALJ's decision may have been improved with respect to applying the <u>Polaski</u> credibility analysis, we cannot agree with Flynn's premise.  It is perfectly appropriate for an ALJ to find a claimant's testimony to be credible, but disagree with the claimant's ultimate conclusion of disability as derived from that testimony.  Here, Flynn simply disagrees with the ALJ's ultimate finding that Flynn is not disabled.  Accordingly, we find this argument without merit.

## D.

Finally, Flynn argues that we should consider Dr. Gersh's report and award benefits based on this report when considered along with the record as a whole.  The ALJ did not have the benefit of reviewing Dr. Gersh's report.  However, the Appeals Council did review Dr. Gersh's report and determined that the ALJ's decision was still supported by substantial evidence.  The issue presented here is two-fold.  First, we must determine whether it is proper to consider Dr. Gersh's report in ruling on this case.  Second, assuming that we should consider Dr. Gersh's report, we must

determine how the report should be viewed in context of the record as a whole.

This Court previously considered this issue in <u>Riley v. Shalala</u>, 18 F.3d 619 (8th Cir. 1994). In <u>Riley</u>, the claimant argued "first, that the Appeals Council improperly failed to consider [newly submitted evidence in the form of medical reports] and, second, that even if the Appeals Council considered them, it wrongly concluded that they provided no basis for a grant of review of the administrative law judge's decision." <u>Id</u>. at 622. The Appeals Council in <u>Riley</u> considered the newly submitted medical reports but concluded that the ALJ's conclusion should not be disturbed. The Court concluded that remand to the ALJ for consideration of the report was inappropriate. <u>Id</u>. at 622 (citations omitted). The Court further found that once it was clear that the Appeals Council considered the new report, then the Court's role was to factor in the new report and determine whether the ALJ's decision was still supported by substantial evidence. <u>Id</u>. (citation omitted). This required the Court to speculate on how the ALJ would have weighed the newly submitted reports had they been available at the initial hearing. <u>See id</u>.

We are in the same position here. We must consider Dr. Gersh's report and also consider how the ALJ would have weighed Dr. Gersh's report in making a final ruling. However, even considering Dr. Gersh's report, the ALJ's decision is supported by substantial evidence in the record as a whole. Other than restating Flynn's strengths and weaknesses based on intelligence tests, the only new relevant information is that Dr. Gersh opines that Flynn "may not be able to work in a competitive employment situation." <u>Id</u>. at 275. The Commissioner, however, attacks Dr. Gersh's "work" opinion, arguing that we should ignore his opinion. While we do

not completely ignore Dr. Gersh's opinion on this issue, we note that Dr. Gersh's opinion is not a medical opinion but an opinion on the application of the statute. However, applying the statute is a task "assigned solely to the discretion of the [Commissioner]." See Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991). The Commissioner is correct; therefore, we do not give weight to Dr. Gersh's work opinion. We also note that except for his work opinion, the report contains little, if any, additional evidence not already contained in the record. Therefore, even considering Dr. Gersh's report, we find that the ALJ's decision is supported by substantial evidence.

In reviewing the record as a whole, it does not appear that Flynn's problems are as limiting or as severe as he alleges, especially when it comes to activities that interest him. For example, despite a poor attendance record in high school, Flynn wants to attend art school, Admin. Tr. at 275, an activity that interests him. Flynn also goes to the movies almost every weekend. Id. at 52. He reads the TV Guide to determine when television shows are on that he wants to watch. The record reflects that if motivated, Flynn participates in activities that require attendance and punctuality.

For the reasons discussed in this opinion, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.