Foster v. SSA                          CV-96-628-SD 12/16/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Sally Foster

    v.                                    Civil No. 96-628-SD

John J. Callahan, Acting Commissioner,
 Social Security Administration


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), plaintiff Sally Foster seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) denying her claim for disability insurance benefits. Presently before the court is plaintiff's motion to reverse the Commissioner's decision on the ground that the Commissioner's findings are not supported by substantial evidence. Defendant has moved to affirm. For the reasons stated below, the court affirms.


Background

I. Administrative Proceedings

Foster filed an application for disability insurance benefits on December 16, 1993. The SSA denied the application initially, and again upon reconsideration. Foster requested and received a hearing before an Administrative Law Judge (ALJ), which was held in Manchester, New Hampshire, on February 14,

1995. Foster and her attorney appeared before the ALJ on that date. Peter Clarke, a vocational counselor, also testified on Foster's behalf. Dr. Christopher Wood also appeared and testified as an impartial vocational expert.

On May 26, 1995, the ALJ issued a decision applying the five-step process prescribed by 20 C.F.R. § 404.1520 (1997).[1] The ALJ found that 1) Foster had not engaged in substantial

1 To determine whether an individual is disabled, the ALJ must apply the following five steps:

> (1) First, the ALJ ascertains whether the applicant currently is working; if so, the claim is denied.
> (2) Second, the ALJ determines, solely on the basis of medical evidence, whether the claimed impairment is "severe", that is, of a magnitude sufficient to limit significantly the individual's "physical or mental ability to do basic work activities"; if it is not, the claim is denied.
> (3) Third, the ALJ decides, again using only medical evidence, if the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations; if it does, the claimant automatically is awarded disability benefits.
> (4) Fourth, the ALJ considers whether the applicant has sufficient "residual functional capacity"--defined as what an individual "can still do despite [his] limitations"--to perform his past work; if so, the claim is denied.
> (5) Finally, the ALJ adjudicates, on the basis of the claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy.

1 HARVEY L. McCORMICK, SOCIAL SECURITY CLAIMS AND PROCEDURES § 410 (4th ed. 1991) (citations and internal references omitted).

gainful activity since her alleged onset of disability; 2) the impairment caused by a compressed radial nerve in Foster's right arm was severe enough to limit her ability to perform the physical functions of work; 3) Foster's impairment did not meet or equal the severity of any impairment listed in 20 C.F.R. § 404, App. 1, Subpt. P, Table No. 1; 4) Foster's impairment precluded her from performing her past relevant work as a hairdresser and glue machine operator; and 5) based upon her residual functional capacity, age, education, and work experience, Foster was not disabled because there were a significant number of jobs in the national economy that she could perform.

The Appeals Council denied Foster's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review.

II. Facts

The following facts can be gleaned from the Joint Statement of Material Facts the parties filed pursuant to Local Rule 9.1(b).

Foster, who was 47 at the time of her hearing, received a high school graduate equivalency degree from Bangor Community College. She has work experience as a hair salon owner and

3

stylist, a cocktail waitress, a glue machine operator, a cashier and meat wrapper, and an apple picker.

On October 3, 1989, Foster saw Dr. John Lawlis III, an orthopedic surgeon. Foster reported that for several months she had been experiencing pain in her right wrist and hand. Dr. Lawlis diagnosed right carpal tunnel syndrome as the cause of Foster's pain. Foster agreed to a right carpal tunnel release, which was performed on October 10, 1989. The surgery, however, failed to provide any lasting relief from the pain.

Nerve conduction studies performed in February 1990 proved normal, and Foster improved with occupational therapy. After returning to work however, Foster complained of increased pain. In the fall of 1990, Foster sought treatment at the Neurology Clinic of the University of Massachusetts Medical Center. Dr. Catherine Phillips recommended a course of conservative treatment and advised Foster to avoid using her arm for strenuous activities.

On March 18, 1991, Dr. Robert Walton examined Foster and diagnosed radial nerve compression. He recommended surgical decompression, and Foster agreed to the surgery. Foster had the operation on April 2, 1991, and reported considerable relief shortly after the procedure. Her condition, however, was aggravated when someone grabbed her arm at a reunion party.

4

Thereafter Foster complained of burning and pain in her forearm. Physical examination revealed full range of motion and normal sensibility, however. Foster continued on a course of conservative treatment, but still complained of aching and hypersensitivity. On August 16, 1991, Dr. Walton expressed the opinion that her symptoms were consistent with Waardenburg's Syndrome. The doctor recommended a second radial nerve decompression, to which Foster agreed.

On August 23, 1991, Foster again underwent surgery, and seventeen days later reported complete abatement of the aching. On October 28, 1991, Dr. Walton reported that Foster was completely asymptomatic. At this time, he also noted that Foster had excellent pinch and grip strength. Dr. Walton advised that Foster could perform light activities, but should avoid activities requiring repetitive pronation and supination, such as hairdressing.

In December 1991, Foster reported swelling and pain after twisting her arm while caring for a small child. Dr. Walton recommended a course of nonsteroidal anti-inflammatory medication and the use of a forearm strap when engaging in vigorous activities. Subsequent progress notes do not indicate any worsening of Foster's condition. Dr. Walton doubted that Foster would be able to return to work as a hairdresser, but encouraged

her to engage in other types of work that did not involve repetitive pronation and supination.

In October 1992, Dr. Kenneth O'Neil conducted an independent medical evaluation and concluded that Foster had a radial nerve entrapment and could not work as a hairdresser, but was capable of light to moderate work.

Foster continued to have pain and began seeing a physiatrist, Dr. William Kois, on November 30, 1993. Dr. Kois indicated that Foster had chronic medial and lateral epicondylitis (tennis elbow), and a possible cervical radiculopathy. A subsequent CT scan showed no evidence of a herniated disc, and only minimal bulging. Dr. Kois recommended physical therapy and splinting. Dr. Kois's subsequent notes indicate continued complaints, without documenting any significant worsening of Foster's physical condition.

Dr. O'Neil conducted a second independent medical evaluation on March 10, 1994. At this time Foster reported difficulty with housework, but Dr. O'Neil concluded that she remained capable of performing light work.

On June 1, 1994, Foster underwent a psychological examination by Dr. W.W. Lothrop. Foster indicated that she had been in therapy for nine months and was taking Zoloft for depression. Dr. Lothrop noted that depression was not evident in

the evaluation, and did not indicate any functional limitations attributable to Foster's psychological condition. In the course of her administrative proceedings, Foster never submitted reports of the ongoing therapy or opinion evidence regarding her psychological condition.

At the administrative hearing, Foster described her symptomatology. She indicated that her pain was constant and compared it to a "nagging toothache that doesn't go away." Tr. at 70.

Dr. Wood, the impartial vocational expert, testified at the hearing that Foster's previous positions as a hairdresser and glue machine operator were performed at the light exertional level and were skilled and semiskilled, respectively. In response to a hypothetical, Dr. Wood opined that a younger individual with a high school equivalency who was capable of light work, but precluded form using her right hand for repetitive action, lifting above the shoulder, or writing would be unable to perform Foster's previous jobs. However, Dr. Wood identified other work that such an individual could perform and gave retail sales and ushering as examples. He testified that as of 1990, there were 28,000 usher jobs in the national economy and 212 in New Hampshire. Although Dr. Wood testified that there were 19,873 retail sales jobs in New Hampshire alone, he felt

that Foster would be limited to those positions that did not require regular writing. Dr. Wood estimated that 100 retail positions in New Hampshire and 38,000 nationwide did not require a substantial amount of writing.

## Discussion

### I. Standard of Review

After a final determination by the Commissioner and upon request by a party, the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (1994 & Supp. 1997). The Commissioner's factual findings are conclusive as long as supported by substantial evidence. Id.; Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Rodriquez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

In making factual findings, the Commissioner must weigh and

resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence. Irlanda Ortiz, supra, 955 F.2d at 769. The court will defer to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Accordingly, the Commissioner's decision to deny benefits will be affirmed unless it is based on a legal or clear factual error. Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).

## II. The Commissioner's Determination

Foster challenges the ALJ's decision at step five of 20 C.F.R. § 404.1520's process for disability determinations. Foster claims that the ALJ erred in determining that there was work Foster could perform because her pain and depression make it impossible for her to perform the positions suggested by the vocational expert. Further, Foster claims that even if she could perform these jobs, there are not a significant number of such positions in the economy.

The ALJ found that Foster was able to perform work at the light exertional level, with the further restriction that such work not include repetitive right arm movements. Based on her

age, education, and experience, had Foster been able to perform a full range of light work 20 C.F.R. Pt. 404, Subpt. P, App.2, Table 2, Rule 202.21 (the Grid) would have required the ALJ to enter a finding of not disabled. However, because Foster was unable to perform some light work, the ALJ was required to make an independent determination using the Grid as a framework.

The court finds that the ALJ's decision was based upon ample evidence from the record. Foster's treating physicians, Dr. Walton and Dr. Kois, and the doctor who conducted the independent medical consultation agreed that Foster was capable of work at the light exertional level.

Furthermore, the ALJ considered Foster's pain and concluded that, although the record reveals a medical basis for her complaints, "the claimant's testimony is not credible with respect to the extent of her pain. . . ." Administrative Record (A.R.) at 25. The court will defer to the ALJ's credibility determination because that determination was supported by specific findings. Specifically, the ALJ found minimal medical evidence to support Foster's allegations of constant severe pain. The ALJ noted that Foster's physicians reported normal EMG tests and good strength and motor function. The ALJ also considered Foster's testimony that she performed daily activities such as shopping, cooking, and driving, and that she occasionally worked

10

in her hairdressing shop.

Foster's contention that the ALJ erred by failing to consider the effect of her depression on her ability to perform the identified positions is incorrect. The ALJ did not consider her depression during the step five evaluation of Foster's ability to perform alternative work because he had already determined at step two that her depression was not severe. The ALJ's decision was supported by the evidence. Specifically, the ALJ found the record "devoid of supporting objective clinical evidence documenting symptoms of a severe mental impairment. In addition, the claimant fail[ed] to testify to any functional limitations attributable to this condition." A.R. at 16.

Based upon the finding that Foster could perform light work provided it did not involve repetitive hand movements, the ALJ concluded that the national economy contained a significant number of jobs that Foster could perform. Substantial evidence supports this conclusion. Specifically, the ALJ relied upon the vocational expert's testimony. See Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) ("Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence."); Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995). Foster's contention that she cannot perform the light retail sales position identified by the vocational expert ignores the

11

fact that the expert considered her inability to write frequently. The expert testified that there are 4,000,000 retail positions nationwide and acknowledged that the majority of these require writing that exceeds Foster's capability. Dr. Wood conservatively estimated that 38,000 of these jobs would require less frequent writing and therefore could be performed by someone with Foster's limitations.

Furthermore, Foster's argument that the identified jobs do not exist in her immediate area is misplaced. The relevant statute specifically states, "[a]n individual shall be determined to be under a disability only if he . . . cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives . . . ." 42 U.S.C. § 423(d)(2)(A) (1994 & Supp. 1997) (emphasis added).

<u>Conclusion</u>

For the aforementioned reasons, the plaintiff's motion for reversal (document 7) is denied and the defendant's motion (document 11) is granted. The court hereby affirms the Commissioner's decision.

12

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 16, 1997

cc:   Bradley M. Lown, Esq.
      David L. Broderick, Esq.