Dianne HARRIS, Appellant,

v.

SECRETARY OF the DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Appellee.

No. 91–2974.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1991.

Decided March 24, 1992.

Denver L. Thornton, El Dorado, Ark., argued, for appellant.

Martin W. Long, Dallas, Tex., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

### BACKGROUND

Dianne Harris slipped and fell on some ice, injuring her shoulder, on February 6, 1989. She was 35 years old at the time. Harris claims that her injury limited movement in her left arm and caused a great deal of pain. She applied for Social Security disability benefits on May 19, 1989. Her request for benefits was denied administratively. She then made a timely request for a hearing before an administrative law

judge (ALJ). That hearing was held on February 6, 1990, just twelve months after she was injured.

The ALJ's findings can be summarized as follows: Harris sustained a soft tissue injury to her left shoulder on February 6, 1989, and received medical treatment until at least February 14, 1990. After conservative treatment failed to address Harris's problems adequately, she underwent arthroscopic surgery on January 15, 1990. The ALJ determined that Harris's impairment was severe, but did not rise to the level of severity sufficient to justify a finding of disability based on the medical evidence alone. The ALJ acknowledged that Harris was unable to return to any of her past jobs, but found that the Secretary carried the burden of proving that she was capable of performing sedentary work. According to the ALJ, the medical vocational guidelines indicated that a woman of Harris's relatively young age could make a successful vocational adjustment to unskilled sedentary work that exists in significant numbers in the national economy. Consequently, the ALJ found that Harris was not disabled within the meaning of the Social Security Act.

The ALJ gave four reasons for rejecting Harris's claim that she was disabled because of the pain associated with her injury. First, he found it significant that Harris did not take pain medication after her arthroscopic surgery on January 15, 1990, although she continued to use a TENS unit after that date. Second, the ALJ felt that Harris's work record did not enhance her credibility; he pointed to "many conspicuous gaps in the claimant's earnings record and several years in which she earned less than a thousand dollars." Third, the ALJ found that Harris's daily activities were "not particularly limited." He based this conclusion on his finding that she was "able to do most things, including driving and taking care of her personal needs," and that she also took care of several children. Fourth, the ALJ stated that there was no corroborating testimony at the hearing, and that none of Harris's physicians indicated that she was unable to engage in work activities. The Appeals Council up-

held the ALJ's decision on February 12, 1991, making the ALJ's decision the final decision of the Secretary.

Harris then commenced an action in the United States District Court for the District of Western Arkansas. The court found that substantial evidence on the record as a whole supported the Secretary's decision to deny benefits. Harris now appeals to this court. We reverse and remand with directions to the Secretary to award benefits to Harris from February 6, 1989 to May 14, 1990, and to hold a hearing to determine whether Harris is entitled to benefits after the latter date.

## DISCUSSION

■ Under 20 C.F.R. § 404.316 (1990), the Secretary can award Social Security disability benefits either on a continuing basis or for a "closed period." This court consistently has held that disability is not an "all-or-nothing" proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time. *See Van Horn v. Heckler*, 717 F.2d 1196, 1200 (8th Cir.1983); *see also Atkinson v. Bowen*, 864 F.2d 67, 71 (8th Cir.1988). The Secretary frequently awards such a closed period disability benefit. *See, e.g., Ness v. Sullivan*, 904 F.2d 432, 434–35 (8th Cir.1990); *Woods v. Bowen*, 854 F.2d 288, 290 (8th Cir.1988). The ALJ erred by evaluating only Harris's eligibility for continuing disability benefits, and by failing to consider whether Harris was entitled to a closed period of benefits under 20 C.F.R. § 404.316 (1990). The record is quite clear regarding Harris's condition from February 6, 1989 until February 14, 1990; it is less helpful in determining whether her disability continued beyond that period.

### I.

■ We turn first to the question of whether Harris was entitled to disability benefits for a closed period of time. In order to determine whether Harris's pain was disabling, the ALJ was required to give full consideration to all relevant evi-

dence "including the claimant's prior work record, and observations by third parties and treating and examining physicians...." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (order), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). An ALJ may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Id.; see also Ludden v. Bowen*, 888 F.2d 1246, 1248 (8th Cir.1989). In our view, the ALJ improperly discredited Harris's claim of disability during the period between February 6, 1989 and March 14, 1990.

First, the ALJ had no adequate basis for his finding that Harris's "use of pain medication would not suggest a disabling degree of pain." The record demonstrates conclusively that Harris had limited movement in her left shoulder and that it was painful for her to move her shoulder until some time after her surgery on January 15, 1990. There is no medical evidence whatsoever in the record that contradicts Harris's claims of pain. On August 9, 1989, Dr. John Yocum wrote that "I feel she may well be developing a frozen shoulder." After a September 8, 1989 examination, Dr. Yocum wrote that Harris "again has elevation up to about 90 degrees. She has about 30 degrees of external rotation and can internally rotate to the sacroiliac joint." After an office visit on January 10, 1990, less than one week before Harris's surgery, Dr. Yocum wrote that "[s]he has good elevation but has pain up above 90 degrees. She has marked pain with resisted elevation in both internal and external rotation." After her surgery, Dr. Yocum wrote that Harris "has improved her range of motion."

Moreover, the record indicates that Harris was prescribed pain medication from the time of her injury until after she had the surgery. At various times between February 7, 1989 and January 17, 1989, Harris's doctors had prescribed for her a battery of pain and anti-inflammatory medications.[1] On August 9, 1989 and again on September 14, 1989, Dr. Yocum injected Harris's shoulder with Celestone and Xylocaine.[2] Not only did Harris receive shots for her pain and take the medication prescribed, but she also engaged in a program of therapy.

Medical treatment for Harris's disability continued until at least March 14, 1990. She saw Dr. Yocum on at least four occasions after her surgery. On January 17, 1990, he reported that he had given Harris a prescription for Lorcet Plus, a pain killer. In addition, Yocum prescribed physical therapy "to be done daily for active and passive range of motion and flexibility exercises." On January 22, 1990, Yocum again examined Harris and instructed her to continue therapy three times per week. On January 31, 1990, Dr. Yocum reported:

> She is now two weeks out from arthroscopy of her left shoulder. She has been in therapy sessions at El Dorado. She has improved her range of motion. She can now elevate up to about 90 degrees. She is still having a lot of pain. She has further passive elevation up to about 135 degrees, but again has pain much past abduction past 90 degrees. She is certainly symptomatically improved since her last visit. I will have her continue on her active and passive range of motion exercises in physical therapy....

On February 14, 1990, Dr. Yocum saw Harris, apparently for the last time, and reported:

> She is now just over a month out from her arthroscopic acromioplasty and resection of her labral tear. She says that she is a lot better since her last visit and that she is not taking any pain pills at this point. She says that she is using her TENS unit, however.

---

1. Harris's medications included Orudis, Tylenol with Codeine, Parafon Forte, Feldene, Ansaid, Voltaren, Lorcet Plus, Fiorinal, Fioricet, Hydrocodone, and Ibuprofen.

2. Celestone is used as an anti-inflammatory and to relieve pain. *Physician's Desk Reference* 2081–82 (46th ed. 1992). Xylocaine is an anesthetic. *Id.* at 637.

On examination, she is able to elevate up to about 12 degrees and has full passive elevation.

I will have her continue her therapy for another month.

It is clear from these records that the surgery was helpful and that Harris was improving, but that Dr. Yocum wanted her to continue therapy until at least March 14, 1990. As the ALJ found, Harris continued to use the TENS unit after the surgery and was using it at the date of the hearing.

Second, the ALJ's skepticism regarding Harris's work record is wholly unfounded. Harris's work record, rather than casting doubt on her credibility, supports it. While the record reveals that she only worked part time at low-paying jobs during her childbearing years, it also indicated she worked full time for the same employer from July 31, 1985 until she was injured. She had the following earnings:

| | |
|---|---|
| 1985 | $12,999 |
| 1986 | 14,346 |
| 1987 | 16,814 |
| 1988 | 17,145 |

The record further indicates that Harris earned $6,516 in 1983 and $12,291 in 1984. In both of these years, she worked for Country Pride Foods. Harris's solid work record, coupled with her statement to the ALJ that her "main objective is to go back to work," only enhances her credibility.

■ Third, the ALJ placed undue emphasis on Harris's ability to conduct her personal activities. The fact that a claimant such as Harris cooks, cleans, shops, does laundry, and visits friends does not in and of itself constitute substantial evidence that a claimant possesses the residual functional capacity to engage in substantial gainful activity. *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989). Moreover, there is nothing in the record to support the ALJ's statement that Harris was "able to do most things," including taking care of several children. At her hearing, Harris testified that she could feed herself, brush her teeth, and comb her hair by propping her head up with her left elbow. In the various reports that Harris filled in about her daily activities, she stated: "No cooking—cleaning; some shopping when needed to for food, my girl's school supplies, household items, the bank." Her only social contacts were to "see my sister when she comes by or when I have a better feeling day." When she did go to visit her sister, her oldest daughter drove her. She did not do much driving because it was painful and she needed a pillow to drive or ride. She fixed hot dogs and other foods which take a short time to cook. She ironed and folded clothes, and on a good day, she might have washed one or two loads of laundry, with her daughter doing the drying and putting the baskets in and out of the car and the dryer. She spent much of her day listening to the radio and watching TV. These are all activities that this court has consistently held are not substantial evidence of the ability to do full-time competitive work. *See Thomas*, 876 F.2d at 669. In fact, the only evidence in the record relating to Harris's ability to return to work indicates that she attempted to go back to work for her former employer and was sent home because she could not do her job.

In light of this record, we conclude that Harris was totally disabled from February 6, 1989 until at least March 14, 1990.[3] There is not substantial evidence to support the decision of the ALJ that the claimant was not entitled to disability benefits through at least May 14, 1990.[4]

## II.

■ We next consider whether Harris was entitled to benefits after May 14, 1990,

---

3. Harris's last medical treatment that is apparent from the record was her visit to Dr. Yocum on February 14, 1990. Dr. Yocum ordered Harris to continue therapy for another month, at which time she was to return to Yocum's office. There is no evidence in the record whether this follow-up visit ever occurred. Consequently, we find that Harris's disability continued until at least March 14, 1990, the date that her therapy concluded.

4. 20 C.F.R. § 404.316(b)(3) provides that a claimant's entitlement to disability benefits ends the second month after the month in which the disability ends; Harris's benefits, therefore, should have continued at least through May 14, 1990.

and, if she was, whether those benefits should be continuing or for a closed period. The record is of little help to us in resolving this question. Harris was not represented at her hearing before the ALJ. It is well established that "the ALJ has a duty to develop the facts fully and fairly, particularly when the claimant is not represented by counsel." *Driggins v. Harris,* 657 F.2d 187, 188 (8th Cir.1981); *see also Highfill v. Bowen,* 832 F.2d 112, 115 (8th Cir.1987). Here, the ALJ made little effort to develop Harris's testimony at the hearing. In particular, the record shows that Harris was undergoing therapy at the time of her hearing, and was to continue therapy until at least March 14, 1990. It is not apparent whether that continuing therapy would permit her to return to work, and the ALJ did not attempt to obtain any further information from either Harris, Dr. Yocum, or a consulting doctor for the Social Security Administration on this matter.

## CONCLUSION

We thus hold that there is not substantial evidence in the record to justify denying Harris disability benefits for the period February 6, 1989 through May 14, 1990. We remand to determine whether or not she should receive benefits after that date.