No. 95-3201

William Roe,                          *
                                      *
          Appellant,                  *
                                      *   Appeal from the United States
     v.                               *   District Court for the
                                      *   Southern District of Iowa.
Shirley S. Chater, Commissioner       *
of the Social Security                *
Administration,                       *
                                      *
          Appellee.                   *

_____

Submitted:  February 15, 1996

Filed:  August 9, 1996
_____

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

     William E. Roe appeals the Commissioner of the Social Security
Administration's (Commissioner) decision denying him disability benefits.
Roe contends that the administrative law judge (ALJ) improperly failed to
precisely state Roe's mental condition when posing a hypothetical question
to a vocational expert.  We disagree and affirm.

## I.

     Roe was born on November 14, 1941, in Davenport, Iowa.  He attended
school until eighth grade when he was expelled.  Roe completed his General
Equivalency Diploma while in the navy.

Following his military service, Roe worked in a variety of jobs.

On June 11, 1990, at the age of forty-eight years, Roe filed applications under the Social Security Act for supplemental security income, 42 U.S.C. §§ 1381-1383d, and disability insurance benefits, 42 U.S.C. §§ 401-433.  Roe claimed he became disabled on August 2, 1989, due to chronic obstructive pulmonary disease, asthma, a degenerative knee condition, and high blood pressure.  The Commissioner initially denied Roe disability benefits on August 1, 1990.  On March 29, 1994, after several administrative appeals, Roe had a second hearing before an ALJ.

The ALJ evaluated Roe's claim according to the five-step analysis prescribed by the Social Security Regulations.  See 20 C.F.R. § 404.1520(b)-(f) (1990).[1]  At step four, the ALJ determines the nature of Roe's past relevant work and evaluates whether Roe is capable of performing this work in light of his residual functional capacity.  If the claimant is found to be sufficiently able to perform any of his past relevant work, he is not considered to be

---

[1]Under the sequential five-step analysis, a claimant is not disabled if (1) he is working and the work qualifies as substantial gainful activity, or (2) he does not have an impairment or combination of impairments which significantly limits his ability to do basic work activities.  Further, a claimant is not disabled if (3) he does not have an impairment which is presumptively considered to be disabling, (4) his residual functional capacity allows him to meet the demands of past relevant work, and (5) considering his residual functional capacity, age, education, and past work experience, he can perform other work.  20 C.F.R. § 404.1520(b)-(f).

In Roe's case, the ALJ found, in the first step, that while Roe was currently working on a relatively regular basis, he was not engaged in substantial gainful activity due to the variability of his income.  See 20 C.F.R. §§ 404.1520(b), 416.920(b) (1990).  At the second step, he found that, cumulatively, Roe had a severe impairment.  At the third step, the ALJ held that Roe's impairments did not meet the statutory criteria for an impairment presumed to be disabling.  Admin. Tr. at 19-20.  At the fourth step, the ALJ found that Roe was capable of performing past relevant work and, therefore, not disabled.

disabled and, therefore, ineligible for benefits.  See Bowen v. City of New York, 476 U.S. 467, 471 (1986).

In determining whether Roe could perform his past relevant work, the ALJ considered work that Roe had performed over the past fifteen years that lasted long enough for Roe to learn to do the work and that constituted a substantial gainful activity.  See Nimick v. Secretary of Health & Human Serv., 887 F.2d 864, 866 n.3 (8th Cir. 1989).  Under this criteria, Roe's past relevant work included positions as a garbage collector, a garbage collection driver, a janitor, a product assembler, a security guard, a yard worker, and a wooden toy assembler.  Admin. Tr. at 15.

The ALJ also considered Roe's residual functional capacity which is defined as "what [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a) (1990).  Assessing Roe's residual functional capacity requires the ALJ to consider all of the relevant evidence to determine the claimant's ability to meet certain mental, physical, sensory, and other demands of a job.  Id.  Based on the medical and psychological testimony presented at the hearing, as well as the testimony of Roe and his wife, the ALJ concluded that Roe possessed the residual functional capacity to:

> perform work-related activities except for work involving lifting and carrying more than 20 pounds occasionally or 10 pounds frequently; standing or walking for more than one hour at a time; repetitive stooping, squatting, kneeling, crawling, or climbing; exposure to concentrations of dust, fumes, smoke, or extremes of heat, humidity, or cold; work which is very complex or technical in nature, though he can perform more than simple, routine, repetitive tasks which do not rely on written instruction or material; work which requires constant, close attention to detail; work which does not provide for occasional supervision; or work which must be performed faster than at a regular work pace.

Admin. Tr. at 27.

The ALJ posed a hypothetical question[2] incorporating these limitations to a vocational expert (VE), who responded that such an individual would be able to work as a janitor or as a security guard. <u>Id.</u> at 227. Based on the VE's response and the other evidence presented at the hearing,[3] the ALJ held that Roe was capable of past relevant work as a

_____

[2]The hypothetical question was as follows:

The first assumption is that we have an individual who is currently 52 years old, was 44 years old as of the alleged onset date of disability. He's a male. He has a high school general equivalency diploma. He has past relevant work as a garbage collector/driver and collector, janitor, product assembler and security guard, and he has the following impairments. He has bronchial asthma, degenerative changes of the knees and feet with complaints of pain, obesity, hypertension, history of bipolar affective disorder, low average intelligence, developmental dyslexia, history of conversion reaction, and medically determinable disorders resulting in complaints of multiple joints, and as a result of a combination of those impairments, he has the physical and mental capacity to perform work related activities, except for lifting of no more than 20 pounds, routinely lifting 10 pounds, with no standing or walking of more than 1 hour at a time, with no repetitive stooping, squatting, kneeling, crawling or climbing. This individual should not work in the presence of extreme heat or cold, or excessive dust, fumes or smoke. He is not able to do very complex or technical work, but is able to do more than simple, routine, repetitive work, not relying on written instruction or on written matter, and not requiring constant, close attention to detail. He does require occasional supervision, and should not work at more than a regular pace using three speeds of pace, being fast, regular and slow. Would this individual be able to perform any job he previously worked at, either as he performed it or as it is generally performed within the national economy, and if so, would you please specify which job?

Admin. Tr. at 226-27.

[3]The ALJ discounted Roe's and his wife's testimony on the extent of impairment caused by Roe's conditions because the ALJ

-4-

janitor or as a security guard.

_____

found that their testimony lacked credibility.  Admin. Tr. at 27.

Roe then sought review by the SSA Appeals Council, which was denied, leaving the ALJ's decision as the final decision of the Commissioner. On August 19, 1994, Roe filed a complaint against the Commissioner in United States District Court for the Southern District of Iowa. After briefing, the district court affirmed the Commissioner's decision to deny Roe benefits. Roe now appeals.

## II.

On appeal, Roe makes two arguments concerning the hypothetical question. First, Roe argues that the hypothetical failed to precisely state all of Roe's relevant conditions and, therefore, the response elicited from the VE cannot be considered substantial evidence. Roe also argues that, given the particular phrasing of the ALJ's hypothetical question, the VE could only answer in the affirmative.

In reviewing the decision of the ALJ, we must affirm if it is supported by substantial evidence based on the record as a whole. Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994); see also 42 U.S.C. § 405(g). Substantial evidence "is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993). Thus, "[w]e do not reweigh the evidence or review the factual record de novo." Naber v. Shalala, 22 F.3d 186, 188 (8th Cir. 1994). Rather, "'if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision.'" Oberst, 2 F.3d at 250 (quoting Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)).

Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence. See Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996); cf. Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not

encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision).  The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole."  Id. (citing Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993)); see also Morse v. Shalala, 32 F.3d 1228, 1230 (8th Cir. 1994).  The testimony of a VE is required only when the claimant carries his initial burden of showing that he is incapable of performing past relevant work and the claimant has a nonexertional injury.  Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994).

**A.**

The ALJ found that Roe has several mental deficiencies.  Admin. Tr. at 37.  Roe has a remote history of bipolar disorder[4] marked by terms of hospitalization in 1971 and in 1978.  Admin. Tr. at 27.  He has dyslexia, which precludes his employment in jobs requiring use of written instructions or record of verbal or numeric information.  He also has a somatoform disorder characterized by an unrealistic interpretation of physical signs and sensations associated with the preoccupation that he has a serious disease or injury.[5]  Admin. Tr. at 23-24.

As a result of these mental deficiencies, the ALJ found that

---

[4]From the OHA Psychiatric Review Technique Form, it appears that Roe has a bipolar I disorder which is characterized by the occurrence of one or more manic episodes often accompanied by one or more major depressive episodes.  Diagnostic and Statistical Manual of Mental Disorders 350-51 (American Psychiatric Association, ed., 4th ed. 1994).

[5]Somatoform disorder is a condition characterized by physical symptoms that suggest a general medical condition and are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder. Diagnostic and Statistical Manual of Mental Disorders 445 (American Psychiatric Association, ed., 4th ed. 1994).

-7-

Roe has two functional limitations.  First, he often has deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner.  Second, Roe has experienced one or two episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from that situation or to experience exacerbated signs or symptoms.  Admin. Tr. at 37.

In the hypothetical question at issue, the ALJ described Roe's residual functional capacity to the VE and asked whether this level of impairment precluded the claimant from performing all of his previous jobs.  Roe argues that in describing his residual functional capacity, the ALJ did not include all of Roe's limitations.  Roe notes that while the ALJ found that Roe often had deficiencies of concentration, persistence, or pace, the ALJ's hypothetical failed to include these limitations.[6]  This omission, according to Roe, constitutes reversible error.  We disagree.

---

[6]Roe also appeals the ALJ's failure to include Roe's one or two demonstrated episodes of deterioration and decompensation in the hypothetical question.  We hold that the ALJ properly omitted any reference to Roe's "deterioration or decompensation in work or work-like settings."

According to the findings of the ALJ, Roe experienced this condition only once or twice.  Under 20 C.F.R. § 404.1520a(b)(3) (1990), only repeated or continual "deterioration or decompensation in work or work-like settings" represents a degree of limitation which is incompatible with the ability to perform this work-related function.  Infrequent or rare incidents of deterioration or decompensation are not.

The ALJ's finding with respect to Roe's episodes of deterioration and decompensation in a work setting is further limited by the ALJ's other findings.  See Mapes v. Chater, 82 F.3d 259, 262-63 (8th Cir. 1996).  Both before and after his episodes, Roe has proven himself capable of functioning in a work-like setting.  The ALJ went to great lengths to describe the various jobs Roe has had since declaring his disability.  Under these circumstances, the ALJ properly concluded that Roe is not limited by this deficiency and it should not be considered in determining whether he is currently disabled from work.

-8-

The point of the hypothetical question is to clearly present to the VE a set of limitations that mirror those of the claimant. See Roth v. Shalala, 45 F.3d 276, 279 (8th Cir. 1995). While the hypothetical question must set forth all the claimant's impairments, see Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985), it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments. For example, the ALJ's hypothetical does not state that Roe suffers from "patellofemoral chondromalacia." Rather, it states that he suffers from "degenerative changes of the knees" which preclude him from "standing or walking for more than one hour at a time." By eschewing the medical term for the descriptive term, the ALJ made a clearer statement of the limitations caused by Roe's weak knees.

While the ALJ's hypothetical question does not include the phrase "deficiencies of concentration, persistence, or pace," it does explicitly state both the mental conditions that cause these deficiencies and the concrete consequences that flow from them. The hypothetical states that the individual has "bipolar affective disorder, low average intelligence, developmental dyslexia, history of conversion reaction, and medically determinable disorders." It is precisely because Roe has a bipolar affective disorder, developmental dyslexia, and a history of conversion reaction that he has problems with his "concentration, persistence, or pace." The hypothetical also states the practical ramifications that flow from his problem with "concentration, persistence, or pace." According to the hypothetical, the individual is not capable of work "requiring constant, close attention to detail," that he requires "occasional supervision," and that he is not capable of work "at more than a regular pace."[7] These phrases capture the

---

[7]The description of Roe's residual functional capacity does not state that Roe suffers from "patellofemoral chondromalacia" either. Rather, it states that he suffers from "degenerative changes of the knees" which preclude him from "standing or walking for more than one hour at a time."

concrete consequences of Roe's "deficiencies of concentration, persistence, and pace" and sufficiently present Roe's disabilities to the VE.

## B.

Roe also argues that the ALJ's hypothetical question was phrased in such a way that the VE could give but one answer. In the hypothetical, the ALJ stated that "he is not able to do very complex or technical work, but is able to do more than simple, routine, repetitive work." Roe argues that the assumption that he is able to do more than simple, routine, repetitive work "led the ALJ to effectively ask the vocational expert that, assuming Mr. Roe could work, could he work?" Reply Br. at 4.

We disagree. The phrase that Roe has picked out from the hypothetical refers to the type of work that Roe is mentally capable of performing. But to say that Roe is mentally capable of a certain level of work is not to direct the VE to find that, overall, Roe has the ability to perform a job. The word "work" is not synonymous with "job." The hypothetical leaves it to the VE to determine whether, in light of Roe's physical and mental abilities, he can perform any job he previously held.

## C.

Construing Roe's claim more generally to argue that the ALJ understated the severity of Roe's physical and mental deficiencies, we also disagree. There is substantial evidence that indicates that Roe was quite capable of performing a past relevant job.

In 1991, Dr. Timothy J. Murphy conducted psychological evaluations of Roe. Dr. Murphy concluded that while Roe had mental

limitations, he was capable of performing fairly simple tasks and understanding, remembering, and carrying out simple instructions and procedures. Later, in 1992, Dr. Nils Varney performed a second psychological evaluation of Roe. The conclusions were similar. Roe was only moderately limited in his ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without undue distraction, accept instruction and respond appropriately to criticism, and get along with coworkers.

Aside from his mental deficiencies, Roe has a number of physical infirmities. Roe has a mild degenerative knee condition for which physicians recommended that he avoid standing for prolonged periods as well as squatting, kneeling, climbing, and heavy lifting. Roe also has mild bronchial asthma which he has controlled by using a bronchial dialator, quitting smoking, and avoiding environmental irritants. Roe has also been diagnosed with hypertension which has been successfully treated with medication.

More telling than a chronicle of Roe's various ailments are his actual activities, which are incongruous with his contention that he cannot work. Since his declared date of disability, Roe has worked at a lumber yard installing dry wall, at a machine and tool company where his duties included inventorying merchandise and using a hack saw cutter, and at a cleaning service where he was responsible for vacuuming and trash disposal. Roe testified that currently he spends the majority of his time woodworking. As the ALJ noted, this hobby requires him to adhere to a self-imposed work schedule and concentrate enough to draw and cut patterns and assemble the product. Admin. Tr. at 12. Roe testified that he could work eight hours a day, five days a week on his woodworking projects, but would have problems with his output level. Id. at 195. In addition to his woodworking, Roe does housework, including washing the dishes, hanging out the laundry, taking out the trash, and odd repair jobs. He shovels snow and mows his lawn as well as

the lawns of ten other residents of his trailer park.

This evidence, especially the fact that Roe maintains a very active schedule, is ample support for the ALJ's determination that Roe is able to perform past relevant work as a janitor or a security guard and should not receive disability benefits.[8]  See Cruze, 85 F.3d at 1324-26 (evidence of hobbies and other daily activities demonstrates that claimant was not disabled); cf. Harris v. Secretary of DHHS, 959 F.2d 723, 726 (8th Cir. 1992) (although evidence of daily activities does not, in and of itself, constitute substantial evidence, they may be considered by the ALJ).

## III.

In sum, we hold that the ALJ's decision that Roe is not disabled and can return to his past relevant work is supported by substantial evidence found in the record as a whole.  We reject Roe's argument that the hypothetical question posed to the VE by the ALJ was flawed.

---

[8]The dissent emphasizes that "[t]he position of a janitor is classified as heavy work" under the Dictionary of Occupational Titles (DOT).  Dissenting Op. at 16.  This reliance on DOT classifications is misplaced.  A DOT definition of a particular job represents a generic job description and offers the "approximate maximum requirements for each position." Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).  Indeed, the DOT itself warns that the job characteristics for each position "reflect[] jobs as they have been found to occur, but . . . may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Dictionary of Occupational Titles, U.S. Dep't of Labor, Employment & Training Admin., Vol. 1, at xiii (4th ed. 1991).

HEANEY, Circuit Judge, dissenting.

It strains the imagination to believe that this 5'10", 52-year-old male who weighs at least 279 pounds is able to perform all the duties of his past work as a janitor or a security guard on a full-time basis in the competitive workplace. Not only is Roe obese, he suffers from a combination of the following physical and mental impairments: bronchial asthma; painful degenerative changes of the knees and feet; hypertension; a history of conversion reaction (i.e., loss of physical functioning that suggests a physical disorder but is actually an expression of psychological conflict or need); medically determinable disorders resulting in complaints of multiple joint pain; developmental dyslexia and low-average intelligence (i.e., word identification skills at beginning sixth-grade level, spelling skills at the fourth-grade level, and arithmetic skills at the fifth-grade level); a history of bipolar affective disorder; an inability to hold ideas in his mind; deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and a history of deterioration or decompensation episodes in work or work-like settings, which causes him to withdraw from that situation or to experience exacerbated signs or symptoms. I believe Roe is disabled and entitled to benefits unless the Secretary demonstrates that he can perform other available work. Therefore, I respectfully dissent.

This case has been before two administrative law judges, first in June 1992 and then two years later in June 1994. The first ALJ found that Roe could not return to his past relevant work. Admin. Tr. at 557.[1] The

[1]The vocational expert called in the first hearing looked at the same regulation and essentially the same factual record. She testified that Roe could not perform any of his past relevant work:

    Q  Okay. In your opinion, with those limitations could Mr. Roe do any of his past work as he did it or as it is normally performed in the national economy?

    A  No, sir.

    Q  Can you highlight the grounds for your opinion,

-13-

the basis for your opinion?

A Yes, sir. . . . . The janitorial work would require standing more than two hours per day and one of the conditions in the hypothetical was no more standing than two hours a day. . . . [T]he security guard position would be, the problem again that security work is often performed out of doors and we would have exposure to humidity and temperature changes and those kinds of things out of doors. That, too, would require standing no more than two hours a day. That would preclude him from that.

Q So that as I understand your answer were I to change the limitations from what [in] essence is light lifting and carrying to sedentary it would be even more true?

A Yes, sir. It would be even more true.

Q Because as the way I see. Okay.

A The hypothetical that you posed, the lifting restrictions are similar to a light occupation. The standing of no more than two hours would require me to choose occupations in the sedentary level.

Q I see. All right. Now, assume the same limitations and again, yes. Assume the same limitations. In your opinion, with those limitations could the claimant possess any transferable skills?

A No, sir. Not with these limitations. There would be no jobs that he could really use in his transferable skills.

Admin. Tr. at 157-58. Based on this testimony, the ALJ concluded:

Given the totality of [Roe's] episodic but nevertheless functional limitations, the vocational expert convincingly testified that claimant would be prevented from returning to his past relevant work.

Admin. Tr. at 557. In light of this determination, the burden in the first proceeding shifted to the Secretary to show that there were other jobs existing in sufficient numbers in the national

-14-

second ALJ, on substantially the same evidence,

_____

economy that Roe could perform given his impairments, functional
limitations, age, education, and work experience.  <u>Id.</u>

found that Roe could return to his past relevant work as a janitor or security guard. The second ALJ offers no explanation for this inconsistency.

The second ALJ fails to give adequate weight to the fact that, although Roe worked as a janitor and a security guard during 1990, 1991, and 1992, he only worked part time and his wife helped him on the janitorial jobs.[2] In 1990, Roe only earned $2,906; in 1991 only $1,341; and in 1992 only $221. Admin. Tr. 664. As noted by the second ALJ, none of his work after the onset of his disability constituted substantial gainful activity under social security regulations. Id. at 16; see also 20 C.F.R. § 404.1574(b)(2)(vii) (earnings of more than $500 a month in a calendar year after 1989 constitute substantial gainful activity). Moreover, Roe had to quit his part-time jobs because he was unable to handle the stress.

Based on the vocational expert's testimony, the ALJ determined that Roe could return to his past relevant work as either a janitor or a security guard as those jobs are set out in the Dictionary of Occupational Titles ("DOT"), published by the United States Department of Labor. Admin. Tr. at 25, 28; DOT 381.687-014 at 282 (janitor) (4th ed. Rev. 1991); id. 372.667-034 at 269 (security

---

[2]Roe worked as a full-time night watchman from September 1985 to February 1986. Admin. Tr. at 203. In addition, he worked full-time as a janitor for a ten-month period in 1986 and 1987. Id. 202. Subsequent to the August 2, 1989 onset of his disability, however, Roe worked only sporadically. He did part-time work as janitor in 1991 and 1992; his wife helped him perform the work. Id. at 67, 68. Later, from March 1993 until March 1994, Roe worked between five and ten hours per week as a janitor. Id. at 206.

guard).[3]  That determination is not supported by substantial

---

[3]The ALJ noted the specific jobs to which Roe could return by their designation in the Dictionary of Occupational Titles. The DOT characterizes the duties of a janitor as follows:

**381.687-014  CLEANER, COMMERCIAL OR INSTITUTIONAL (any industry) alternate titles:  clean-up worker; housekeeper; janitor; laborer, building maintenance; mopper; porter; scrubber; sweeper**

Keeps premises of office building, apartment house, or other commercial or institutional building in clean and orderly condition:  Cleans and polishes lighting fixtures, marble surfaces, and trim, and performs duties described in CLEANER (any industry) I Master Title.  [See below.]  May cut and trim grass, and shovel snow, using power equipment or handtools. May deliver messages.  May transport small equipment or tools between departments.  May setup tables and chairs in auditorium or hall.
. . . .

**Master Title CLEANER I (any industry)**

Maintains premises of commercial, institutional, or industrial establishments, office buildings, hotels and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments in clean and orderly condition, performing the following duties:  Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors, elevators, stairways, and locker rooms and other work areas. Sweeps, scrubs, waxes, and polishes floors, using brooms and mops and powered scrubbing and waxing machines.  Cleans rugs, carpets, upholstered furniture, and draperies, using vacuum cleaner. Dusts furniture and equipment. Polishes metalwork, such as fixtures and fittings.  Washes walls, ceiling, and woodwork.  Washes windows, door panels, and sills.  Empties wastebaskets, and empties and cleans ashtrays.  Transports trash and waste to disposal area. Replenishes bathroom supplies.  Replaces light bulbs.  . . . .

The work of a security guard is classified as follows:

**372.667-034  GUARD, SECURITY (any industry) alternate titles:       patrol guard; special police officer; watchguard**

-17-

evidence.  Roe cannot perform the full range of duties required by those jobs in a competitive economy.  The position of a janitor is classified as heavy work.  DOT 381.687-014 at 282.[4]  Heavy work entails "exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects."  Id. at 1012-13 (App. C).  Moreover, while a security guard job requires only light exertion, the job requires reasoning, developmental, and language skills beyond Roe's intellectual capacity.  Id. 372.667-034 at 269.  To do the work of a security guard, Roe would need to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several

---

[4] Guards industrial or commercial property against fire, theft, vandalism, and illegal entry, performing any combination of following duties:  Patrols, periodically, buildings and grounds of industrial plant or commercial establishment, docks, logging camp area, or work site.
Examines doors, windows, and gates to determine that they are secure.  Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants.  Inspects equipment and machinery to ascertain if tampering has occurred.  Watches for and reports irregularities, such as fire hazards, leaking water pipes, and security doors left unlocked.  Observes departing personnel to guard against theft of company property.  Sounds alarm or calls police or fire department by telephone in case of fire or presence of unauthorized persons.  Permits authorized persons to enter property.  May register at watch stations to record time of inspection trips.  May record data, such as property damage, unusual occurrences, and malfunctioning of machinery or equipment, for use of supervisory staff.  May perform janitorial duties and set thermostatic controls to maintain specified temperature in buildings or cold storage rooms.  May tend furnace or boiler.  May be deputized to arrest trespassers.  May regulate vehicle and pedestrian traffic at plant entrance to maintain orderly flow.  May patrol site with guard dog on leash.  May watch for fires and be designated Fire Patroller (logging).  . . . .

[4]The ALJ's contradictory statement that "a janitor (DOT #372.667-034) [is] an unskilled job which the claimant performs at the light exertional level," [Admin. Tr. at 25, 26] is simply erroneous.

concrete variables in or from standardized situations."  Id. at 1011 (App. C).  Moreover, Roe, with his dyslexia and limited academic abilities, lacks the reading and writing skills required

for the job.  Id.[5]


The majority relies on the opinions of Dr. Timothy Murphy and Dr. Nils Varney to support its view that there is substantial evidence to find Roe was "quite capable of performing a past relevant job."  Maj. Op., supra at 9.  Dr. Murphy offered only a general assessment of Roe's abilities in 1991; he was not told what skills were required for any specific job and certainly expressed no opinion as to whether Roe could perform all the required duties of a janitor or security guard on a full-time basis in a competitive economy.  Moreover, Dr. Varney's full written assessment of Roe casts doubt on his ability to return to his former jobs:

> In addition to his other physical and psychiatric problems, this man is quite badly dyslexic (i.e., he is essentially functionally illiterate) with reading and spelling at grade school levels.  He also has word finding problems, making employment in any area making demands on language skills difficult.  That is, he could not work in a job with written instructions (at least

---

[5]The job requires level 2 language development skills on the Scale of General Educational Development (GED).  Those skills are comprised of the following:

Reading:
>      Passive vocabulary of 5,000-6,000 words.  Read at rate of 190-215 words per minute.  Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation.  Read instructions for assembling model cars and airplanes.

Writing:
>      Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

Speaking:
>      Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

DOT at 1011 (App. C).

-20-

reliably) or reliance on recording verbal or numeric material. In addition, his problems with word finding give the impression (including to his psychiatrist here) that he is very dull.

Opinions expressed above regarding interactions with others and ability to follow directions, etc., are based on observation of his conduct during testing and interview.

Admin. Tr. at 604. Again, Dr. Varney expresses no opinion as to Roe's ability to perform either job on a full-time basis, nor were his observations included in the hypothetical posed to the second vocational expert.

The majority places great reliance on Roe's actual activities. It states that Roe has worked at a lumber yard and at a machine tool company since August 2, 1989, the date of his declared disability. The record indicates that Roe worked part-time at the machine tool company for three months in 1990 and worked at the lumber yard for only two weeks during the same year. Admin. Tr. at 200-01. In any event, the ALJ found that Roe had not engaged in substantial gainful activity at any time pertinent to the decision. Admin. Tr. at 16. Moreover, whether Roe worked at these jobs is irrelevant. No expert testified that Roe could return to either of these jobs and the ALJ does not suggest that he could. Finally, the majority emphasizes that Roe currently performs housework, yard work, and woodworking at his home. This court has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity. Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir. 1995); Harris v. Secretary of DHHS, 959 F.2d 723, 726 (8th Cir. 1992); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989) ("We remind the Secretary that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful

conditions in which real people work in the real world.")

In my opinion, the record establishes that Roe is significantly impaired and that his residual functional capacity does not permit him to meet the demands of his past relevant work. Unless the Secretary demonstrates that Roe can perform other available work despite his impairments, he is entitled to benefits.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.