**George BIELAT, Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Case No. 02–70791.**

United States District Court,
E.D. Michigan,
Southern Division.

April 4, 2003.

Kenneth F. Laritz, Clinton Township, MI, for plaintiff.

Francis L. Zebot, U.S. Attorney's Office, Detroit, MI, for defendant.

*MEMORANDUM AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS*

COHN, District Judge.

## I. Introduction

This is a Social Security case. George Bielat (Bielat) appeals from the final determination of the Commissioner of Social Security (Commissioner) that he was not disabled at the time of his application and therefore was not entitled to social security benefits (benefits). DeCare applied for benefits on March 16, 2000, claiming that he was disabled due to spinal stenosis, left-leg deformity, tendinitis of his left leg and arm, depression, and severe back pain due to a laminectomy. His application was denied initially and upon reconsideration. An administrative law judge (ALJ) conducted a hearing and determined he was not entitled to benefits. The Appeals Council found no basis to grant a review of the ALJ's decision.

Bielat instituted this action for judicial review under 42 U.S.C. § 405(g). The matter was referred to a magistrate judge, before whom Bielat and the Commissioner filed motions for summary judgment. The magistrate judge issued a report and recommendation (MJRR) that the ALJ's decision be reversed because the hypothetical question he posed to the vocational expert at the administrative hearing did not accurately reflect Bielat's limitations.

The Commissioner filed objections to the MJRR with the Court, and Bielat filed a response. For the reasons that follow, the MJRR will be adopted, both motions for summary judgment will be denied, and the case will be remanded for further proceedings.

## II. Facts and Procedural Background

Bielat has a high school education and has taken some college classes. He worked previously as a machinist. His alleged disability onset date is November 30, 1998. Bielat was born on August 7, 1957. At the time of the ALJ's decision, Bielat was 43 years old and qualified as a "younger individual." Bielat has not engaged in substantial gainful activity since his alleged disability-onset date.

Bielat testified at the administrative hearing that he experienced considerable pain that made it hard for him to move around and that he could only stand for about 15 minutes and walk for about 20 minutes. He said that sometimes his back hurt so badly he would lie down in a fetal position for a couple of hours to relieve the pain. He also said he had a hard time concentrating and sleeping, that his mood varied, and that he was easily upset and frequently thought of suicide. He also said he had problems grasping with his left

hand. Bielat also testified that he maintained a residence, payed bills, attended college, and drove a car.

Dr. Steven Goad was Bielat's treating psychiatrist. He evaluated Bielat in 1998 and determined that he had twice attempted suicide and rated him with a global assessment of functioning (GAF) score of 60. A GAF score between 51 and 60 indicates moderate symptoms or "moderate difficulty in social, occupational, or school functioning." American Psychological Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR)* 32 (4th Ed. Text Revision 2000). Dr. Goad prescribed a variety of medications over the years to treat Bielat's depression, and Bielat's depression symptoms ranged from barely being able to get out of bed to only mild symptoms, depending on his medication.

Bielat was examined by Dr. Natalie Weber in 1999 for a Michigan Disability Determination Service Psychiatric Medical exam. She diagnosed him with major depression but found he had no thought or personality disorder. She also found he was fairly articulate and had average or above average intelligence and a depressed mood and restricted affect. She assessed his GAF score as 55.

Disability Determination Services (DDS) physicians also assessed Bielat in 1999. They found his restrictions of daily living were slight, his difficulties in maintaining social function were moderate, and he often had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. They also found his understanding and memory were not significantly limited but that he was moderately limited in maintaining attention and concentration for extended periods of time and in understanding and remembering detailed instructions. DDS physician Dr. Fine completed a mental residual functional capacity assessment in which wrote that "He will not sustain adequate performance of complex, technical tasks.... He can learn, understand, remember and perform single, rote tasks on a sustained basis." The DDS physicians recommended that Bielat not be awarded benefits.

Dr. Ted Stiger evaluated Bielat in 2000 (at the request of Bielat's attorney) and diagnosed him with pain disorder, major depressive disorder, bipolar disorder, and personality disorder. He assessed a GAF score of 50.

The ALJ considered Dr. Goad's testimony. He rejected the opinion of Dr. Stiger because he was hired by Bielat, he only saw Bielat on one occasion, his assessment was based in large part on Bielat's statements, and his findings were inconsistent with those of Dr. Goad.

The ALJ adopted the opinions of the DDS physicians and reviewers. The ALJ also found that Bielat had a "marked" limitation in ability to concentrate or persist at a task until timely completion. The ALJ found that Bielat had been diagnosed with a depressive disorder and personality disorder and that his overall limitation in functional performance in terms of daily living was at the "mild" level and that he was generally able to interact appropriately and communicate effectively with other people. The ALJ did not find Bielat's testimony concerning his pain and the limitations caused by it credible.

After evaluating the extent of Bielat's impairments, the ALJ posed the following hypothetical question to a vocational expert (VE): "Assume I might make a determination that the Claimant could do a restricted range or unskilled sedentary work.... And also we'll be looking at jobs low at the emotional stress level.... Any jobs meeting that criteria?" The VE said

that there were jobs meeting that criteria, including security monitor, ticket seller, telemarketer, and information clerk. Bielat's attorney asked the VE whether Bielat could work if the court gave validity to Dr. Stiger's restrictions of frequent deficiencies of concentration, persistence, or pace that resulted in failure to complete tasks in a timely manner. The VE said Bielat could not work if that were the case.

The ALJ determined that Bielat had the residual functional capacity to perform "a range of low stress sedentary work which provides a sit stand option, requires no repetitive use of his left upper extremity, and requires no exposure to hazards."

### III. Standard of Review

 Judicial review of a Social Security disability benefits application is limited to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantiality of the evidence must be based upon the record taken as a whole. *Futernick v. Richardson,* 484 F.2d 647, 649 (6th Cir.1973). The portions of the MJRR that the claimant finds objectionable are reviewed *de novo. See* 28 U.S.C. § 636(b)(1)(C); *Herriman v. Apfel,* 66 Soc.

Sec. Reptr. Serv. 588, 2000 WL 246598, *1 (E.D.Mich.2000).

### IV. Discussion

The magistrate judge found that the ALJ's hypothetical question to the VE did not fairly include his findings that Bielat often had deficiencies in concentration and that those limitations were marked. The magistrate judge found that these findings, made at step two of the evaluation (determining Bielat's residual functional capacity).[1] He said that the ALJ's hypothetical question to the VE limiting Bielat to "unskilled" and "low stress" jobs did not adequately reflect these findings. He said that stress does not necessarily correlate with pace or ability to concentrate and complete a task; a job could be low stress and simple yet still require high concentration and focus.

The Commissioner argues that the hypothetical question was sufficient because the medical and other record evidence demonstrates that Bielat's concentration deficits did not preclude unskilled work. She says that although the evidence showed that Bielat had difficulty with complex and technical tasks, such as completing college classes, he did not have difficulty with simple tasks. For example, the DDS physicians found that Bielat had little difficulty with simple memory and concentration tasks and that he consistently exhibited organized and coherent thoughts. They also found that Bielat's activities of driving, reading, studying, and attending col-

---

1. The five steps of the analysis are as follows:
 1. If the claimant is performing substantial gainful work, he is not disabled.
 2. If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled.
 3. If the claimant is not performing substantial gainful work and has a severe impairment(s) for a continuous period of at least 12 months, and his impairment(s) meet or medi-

cally equals an impairment in Appendix 1, Subpart P, Regulation No. 4, then the claimant is presumed disabled.
 4. If the claimant's impairment(s) does not prevent him from doing his past relevant work, he is not disabled.
 5. If other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

lege classes demonstrated that he could perform tasks requiring sustained attention. Additionally, they said that Bielat was "not significantly limited" in his ability to carry out short and simple instructions, sustain an ordinary routine, and perform activities within a schedule.

■ An ALJ's hypothetical question to the VE should incorporate specific references to job-related restrictions, not the sort of broad limitations the ALJ finds in determining whether a claimant has a severe impairment. The evaluation of residual functional capacity at step five of the disability analysis differs from the inquiry at steps two and three, and a properly-phrased hypothetical question should incorporate specific, work-related limitations rather than broad and categorical terms. The Commissioner thus correctly notes that the ALJ is not required to repeat the medical findings of limitations verbatim in his hypothetical question. *See, e.g., Roe v. Chater*, 92 F.3d 672 (8th Cir.1996). The hypothetical question must adequately reflect those limitations, though.

■ In general, a reference to "unskilled, sedentary work" is not sufficient to describe deficiencies in concentration. *See Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996) (holding that a reference to "simple jobs" was insufficient to constitute inclusion of the impairments or deficiencies in concentration noted by the ALJ); *McGuire v. Apfel*, 1999 WL 426035 at *15 (D.Or.1999) (holding that "simple work" was insufficient to describe claimant's deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner). The Commissioner notes that unskilled work by definition involves little judgment to perform simple duties that can be learned on the job in a short period of time. *See* 20 C.F.R. § 404.1568(a)(2001). As the magistrate judge argued, though, a job may fit that

description and still require the ability to concentrate. Thus Bielat's ability to "learn, understand, remember, and perform simple, rote tasks on a sustained basis" is not necessarily enough to perform the sorts of jobs mentioned by the VE. For example, monitoring security cameras, a job the VE said could be performed by someone with the limitations in the hypothetical question, is unskilled (as it requires little judgment and may be learned in a short period of time), but if someone in that job could not concentrate and pay attention to the monitors, his performance would almost certainly be deficient.

■ Furthermore, even if "unskilled" and "low stress" did reflect an inability to concentrate, this Court has previously held that a hypothetical question that only includes "difficulties in concentration" is insufficient to describe someone who displays "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner ... often." *Andrews v. Commissioner of Soc. Sec'y*, No. 00–75522 (E.D.Mich. Dec. 18.2001); *see also Thomczek v. Chater*, 1996 WL 426247 (E.D.Mich.1996) (finding that a hypothetical question saying that the claimant was "incapable of concentrating and focusing" was insufficient when the claimant often suffered from deficiencies in concentration because it did not deal with the claimant's specific situation and did not discuss the impact of having concentration deficiencies). The question here did not even include a reference to difficulties in concentration, so it was even less reflective of Bielat's deficiencies than the hypothetical question deemed insufficient in *Andrews*.

## V. Conclusion

The findings and conclusions of the magistrate judge are adopted by the Court. The ALJ's decision is not supported by

substantial evidence because his reliance on the VE's testimony was inappropriate based on a deficient hypothetical question. Accordingly, the case is REMANDED for further hearings.

SO ORDERED.