145 F.Supp.2d 1086 (2001)
Sherry LINCOLN, Plaintiff,
v.
William A. HALTER,[1] Commissioner of Social Security.
No. 1:99CV100 TIA.
United States District Court, E.D. Missouri, Southeastern Division.
March 21, 2001.
*1087 *1088 Larry J. Steele, Walnut Ridge, AR, for Sherry Lincoln, plaintiff.
Wesley D. Wedemeyer, Office of U.S. Attorney, St. Louis, MO, for Social Security Administration Commissioner, defendant.

MEMORANDUM AND ORDER
ADELMAN, United States Magistrate Judge.
This is an action under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of defendant's final decision denying plaintiff's application for supplemental security income benefits and disability insurance benefits. Plaintiff has filed a brief in support of her complaint, and, in response, defendant has filed a brief in support of the answer. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).
On March 29, 1994, plaintiff applied for social security benefits. (Tr. 64; 80-82). Plaintiff's application was denied initially, and on reconsideration (Tr. 53-61; 68-71; 73-77) After a hearing, the Administrative Law Judge ("ALJ") denied benefits, which determination was affirmed by the Appeals Council. (Tr. 3-4; 10-15) Plaintiff then filed an action in the United States District Court. In an order dated September 25, 1997, this court remanded the case to the Commissioner for further proceedings. (Tr. 215-26) The ALJ held another hearing, after which he denied benefits on March 25, 1998 (Tr. 204-209) On June 28, 1999, the Appeals Counsel determined that plaintiff had not filed timely exceptions to the ALJ's decision and thus did not consider plaintiff's exceptions. (Tr. 186) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

Evidence Before the ALJ
The evidence regarding plaintiff's first hearing before an ALJ is thoroughly set forth in this court's prior opinion and is attached to and incorporated herein. (Tr. 204-209) At plaintiff's second hearing held on November 24, 1997, she was 29 years old, single, and lived with her Mother and Grandmother. She weighed 170 pounds and measured five feet. She completed the ninth grade, could read and write, and could do simple arithmetic. (Tr. 231-32) With regard to her education, plaintiff stated that she quit school at the end of ninth grade because she missed so much school, she was falling behind, even in the special education classes. (Tr. 237) Plaintiff presently resides in Charlotte, Michigan and has lived there for the past 2½ years. (Tr. 235)
Most recently, plaintiff had worked at Eaton Manor playing games with elderly residents. She testified that she only received one paycheck because she could not perform the work even on a part-time basis. Plaintiff stated that she would go home sick because she got dizzy and nervous. Her previous jobs included doing laundry for her mother one day a week and working the cash register at Hot Stuff Pizza. She was fired from her position with Hot Stuff Pizza because she was unable to do the work, and she suffered from black-outs. (Tr. 232-34)
Plaintiff testified that her primary physician is Dr. Mondejar. She stated that Dr. Mondejar had been treating her for *1089 the past 2 ½ years and that the Dr. told her to limit the use of her hands due to tendinitis. Dr. Mondejar's office is located in Charlotte, Michigan. (Tr. 234-35) Plaintiff estimated that she had seen Dr. Mondejar approximately ten times over the course of 2 ½ years. (Tr. 238)
At the time of the hearing, she was receiving insulin shots for her diabetes. Plaintiff could drive, but not at night, during snow or rain storms, or when her blood-sugar was elevated. Her recreational activities consisted of helping at the church for approximately 15 minutes per week making phone calls. Plaintiff did not smoke or drink alcohol, and she stated that she had never been treated by a psychiatrist or psychologist. She believed her outlook on life was good. (Tr. 237-39)
Plaintiff's attorney also questioned plaintiff at the hearing. She testified that she suffered from diabetes, blackouts, tendinitis, and vision problems. Plaintiff stated that she was unable to write, so her grandmother filled out her disability forms and wrote in a journal for her in order to keep track of her blood-sugar levels. Plaintiff testified that her blood-sugar levels varied from the low 50's to the 300's. When her blood sugar was low or high, plaintiff felt exhausted, moody, and depressed. Stress seemed to impact her levels. (Tr. 241-248)
Plaintiff stated that she did very little household chores. She did not vacuum, do dishes, mop floors, wash windows, cook, iron, shop, or rake. Plaintiff did a little dusting, made beds with help, took out trash, and dressed herself. She could walk a block and a half when walking her dog. Plaintiff watched television about four hours a day, she read the bible and went to church once or twice a week. She visited her sister a couple times a week. In addition, plaintiff took a two hour nap daily. (Tr. 248-252)
Plaintiff further testified that she could sit for only 15 or 20 minutes because her body went numb due to poor circulation. Further, she thought she could only stand for about 10 or 15 minutes, could only climb one flight of stairs, and would have to sit down in order to bend over. In addition, plaintiff felt she could carry a five-pound bag of sugar for a little bit. (Tr. 252-254)
Plaintiff's mother also testified at the hearing. She stated that plaintiff's diabetes was uncontrollable and fluctuated even without stress. She further stated that she was frequently called away from her job in order to help her daughter. Ms. Lincoln testified that plaintiff tried to help around the house but there was not much she could do, and plaintiff could not work for extended periods of time. For instance, plaintiff would take eight hours to do a load of laundry because she would need to rest. Ms. Lincoln further stated that plaintiff's nerve endings were dying from the diabetes, thus causing numbness in her hands and feet. (Tr. 255-257)
The ALJ also questioned a vocational expert ("VE") at the hearing. The ALJ posed a hypothetical which asked the VE to assume that the individual is of the age, education, and work experience of the plaintiff with several limitations, including sedentary work involving sitting for six hours over the course of a work day, standing or walking for two hours, occasionally lifting and carrying ten pounds, and frequently lifting and carrying five pounds. Further, the ALJ placed seizure restrictions limiting climbing, working at unprotected heights, operating motor vehicles or dangerous machinery. Additionally, the work must be limited to simple work, low-stress in nature. The VE answered that there were a number of jobs which plaintiff could perform, including a cashier in restaurants and theaters, video *1090 clerk, self-service gas station worker, telephone order clerk and solicitor, production inspector, and assembler. (Tr. 261) He testified that there were a significant number of these jobs in the national economy. (Tr. 262-63)
The ALJ then added the restriction that plaintiff could not use her hand on a continuous or repetitive basis. The VE answered that she could still perform the job of cashier, video clerk, self-service gas station attendant, telephone order clerk and telephone solicitor. (Tr. 263) Finally, the VE stated that if an individual could not sit for more than 20 minutes at a time, stand for longer than 10 to 15 minutes, could only occasionally carry 5 pounds, and needed to take a two hour nap daily, that person could not be employed. (Tr. 264)

Medical Evidence
The undersigned thoroughly assessed plaintiff's medical history prior to 1995 in the first complaint filed in the United States District Court. That attached opinion is incorporated herein. Since that time, plaintiff has been treated by Dr. Mondejar for a variety of ailments. On January 26, 1996, plaintiff visited Dr. Mondejar with complaints of headaches, lightheadedness, and stuffiness. The Dr. noted that plaintiff's blood sugar was 133 and that she took insulin twice daily. Dr. Mondejar diagnosed an upper respiratory infection and possible bronchitis and prescribed an antibiotic. (Tr. 318) Plaintiff complained of congestion on September 23, 1996. Dr. Mondejar again diagnosed an upper respiratory infection and bronchitis and prescribed an antibiotic. Plaintiff was also advised to stop smoking. (Tr. 317)
On August 8, 1996, plaintiff again visited Dr. Mondejar. She complained of elevated blood sugar, fatigue, weakness, and a swollen ankle. The doctor remarked that plaintiff appeared depressed and diagnosed uncontrolled diabetes. (Tr. 314) Dr. Mondejar examined plaintiff on October 7, 1997 for complaints of achiness and a cough. Plaintiff also reported that her right thumb was swollen and painful. Dr. Mondejar diagnosed viral symptoms and tendinitis of the right thumb. She prescribed Motrin, rest, and fluids. (Tr. 312)
On October 17, 1997, plaintiff reported to Dr. Mondejar's office for a physical and pap smear. Plaintiff complained of pain in her hands and vaginal burning and itching. The physical examination was normal, except for some vaginal redness and discharge. Dr. Mondejar diagnosed insulin dependent diabetes, probably neuropathy of both hands, and probable monilial infection of the vaginal area. The doctor prescribed Elavil for the pain in plaintiff's hands and Monostat Vaginal cream. (Tr. 311) On November 6, 1997, plaintiff reported that her ears felt plugged, she was dizzy, and she felt fatigue. She also claimed to have burning and itching when her period started over the past three months. (Tr. 307)
On November 10, 1997, plaintiff visited Dr. Mondejar's office, complaining of ear pain, burning sensation in her esophagus, and constipation. Dr. Mondejar diagnosed probable upper respiratory infection and questionable gastric reflux disease. The doctor prescribed an antibiotic, recommended increasing the amount of fruits and vegetables in her diet, and gave her medicine for acid reflux disease. (Tr. 306)
On November 26, 1997, Dr. Mondejar filled out a "Medical Source Statement  Physical." The doctor believed that plaintiff could occasionally lift less than 10 pounds; stand and/or walk a total of 1 hour and continuously for 15 minutes; sit a total of 2 hours; and push and pull to a limited degree. Dr. Mondejar further opined that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and bend; could see, hear, and speak without *1091 limitation; and could reach, handle, finger, and feel with limitations. Plaintiff had no environmental restrictions, and the principal symptoms causing the limitations were subjective pain in both hands. (Tr. 325-26; 329) The "Medical Source Statement  Mental" prepared by Dr. Mondejar stated that plaintiff exhibited unlimited or very good understanding and memory, sustained concentration and persistence, and social interaction. Plaintiff scored "good" in her ability to complete a normal workday and workweek without interruption, ability to respond appropriately to changes in the work setting, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goal or make plans independently of others. (Tr. 326-27)
On January 7, 1998, plaintiff underwent a psychological evaluation by Dr. Keith Ostien. The Wechsler Adult Intelligence Scale  III showed plaintiff to be functioning in the Low Normal to Borderline range of intelligence with a verbal I.Q. of 83, performance I.Q. of 74, and full scale I.Q. of 77. The Wide Range Achievement Test  Revision III showed plaintiff reading at the 4th grade level, spelling at the 2nd grade level, and arithmetic at the 6th grade level. Dr. Ostien opined that plaintiff exhibited a learning disorder. Plaintiff did not show evidence of a thought disorder, hallucinations, delusions, persecutions, obsessions, or suicidal ideation. However, she did show patterns of vigilance, and was wary, angry, distrustful and defensive during the evaluation. Dr. Ostien also noted significant somatic preoccupation, specifically stating that plaintiff was exaggerated in her responses to any task in which she had to perform motor functions, demonstrating that she had significant pain in her hands with minimal exertion. Dr. Ostien believed that plaintiff showed patterns of psychological and functional dependancy, social avoidance and emotional immaturity. (Tr. 333-34)
The doctor's diagnostic impressions included developmental reading disorder; developmental spelling disorder; rule out somotoform disorder; borderline intellectual functioning; dependent personality disorder with avoidant features; severe diabetes and tendinitis; moderate psychosocial stressors associated with her health, social and interpersonal functioning, cognitive and academic limitations, and vocational limitations; and a Global Assessment Functioning of 55. He recommended that she continue consulting with her physician to determine her medical condition and ability to work. He thought plaintiff could benefit from assistance through rehabilitation services to develop a vocational skill and find a job. Further, Dr. Ostien felt that plaintiff could benefit from therapy to address her dependency, social avoidance and somatic preoccupation. (Tr. 334)
In a Medical Assessment of Ability to do Work-Related Activities (Mental), Dr. Ostien opined that plaintiff possessed a good ability to follow work rules; a fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, and maintain attention/concentration; and a poor to none ability to deal with work stresses and function independently. Plaintiff's limitations included borderline I.Q., learning disorder, multiple health problems, and dependent personality disorder. Dr. Ostien also opined that plaintiff exhibited a fair ability to make performance adjustments, including understanding, remembering, and carrying out complex, detailed, or simple job instructions. She scored "good" in maintaining personal appearance and "fair" in behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. (Tr. 336)
On February 4, 1998, Dr. Thomas Keaveney examined plaintiff. Plaintiff reported *1092 that her main disability was related to diabetes and that her blood sugar tended to be variable but typically ran about 170. She further stated that she suffered from pain and numbness in hands and feet and believed that her main problems were related to fatigue and muscular weakness. Dr. Keaveney found plaintiff to be a well-developed, well-nourished, white female in no acute distress. Her physical examination was normal, with some mild swelling in the hands. Dr. Keaveney stated that plaintiff's blood sugars were erratic but were generally stable. While plaintiff did show some symptoms of early polyneuropathy, there was no such evidence on exam. He suggested further testing to make this diagnosis. Further, Dr. Keaveney opined that plaintiff's fatigue was related to fluctuating blood glucose levels, but could also be a result of depression. He recommended a psychiatric evaluation. (Tr. 339-40)
In a Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Keaveney found that plaintiff's impairment did not affect lifting/carrying, standing/walking, or sitting. He opined that plaintiff could frequently climb, balance, stoop, crouch, kneel, and crawl. Further, her impairment did not limit reaching, handling, feeling, pushing/pulling, seeing, hearing, or speaking. Dr. Keaveney did feel that plaintiff should restrict working around heights and moving machinery due to possible hypoglycemic episodes.[2] She had no other environmental restrictions. (Tr. 341-42)
Plaintiff also kept a journal of her blood sugar levels beginning August, 1996 and ending November, 1997. (Tr. 289-300) Her blood sugar levels fluctuated from the 40's to the 300's. (Id.) She also kept a diary documenting how she felt during October and November, 1997. (Tr. 301-304) Plaintiff complained of cold symptoms, vaginal burning, dizziness, swollen hands, constipation, and general aches and pains. (Id.)

The ALJ's Determination
The ALJ found that plaintiff met the disability insured status requirements on April 1, 1992, the date she claimed she became unable to work, and continued to meet them through September 30, 1995. Plaintiff had not engaged in substantial gainful activity since March, 1992. The ALJ determined that the medical evidence established that plaintiff suffered from diabetes, borderline intellectual functioning, a somatoform disorder, and a dependent personality disorder; but that she did not have an impairment or combination thereof listed in, or equal to one listed in Appendix 1, Subpart P, Regulation No. 4. Further, the ALJ found that plaintiff's complaints of disabling pain, blackout spells, and headaches were not supported by the evidence and were not credible. (Tr. 207-208)
According to the ALJ, plaintiff had the exertional residual functional capacity to perform work except for prolonged walking and standing, or lifting more than 10 pounds. Non-exertional limitations included restricting plaintiff to environments not requiring climbing or not involving exposure to unprotected heights, motor vehicles, or dangerous machinery. In addition, the ALJ stated that plaintiff was limited to activities not involving more than low levels of stress and not requiring repetitive *1093 use of hands. He found that plaintiff was unable to perform her past relevant work as a waitress, and that her residual functional capacity for the full range of sedentary work was reduced by her non-exertional limitations. (Tr. 208)
In view of plaintiff's younger age of 30 years-old, limited ninth grade education, prior work experience, and exertional capacity for sedentary work, the ALJ stated that the regulations would direct a conclusion of not disabled. However, due to her non-exertional limitations, the ALJ relied on vocational expert testimony to find that limitations did not substantially compromise plaintiff's capacity for the full range of sedentary work. Thus, the ALJ concluded that plaintiff was not disabled at any time through the date of the decision. (Tr. 208-209)
Specifically, the ALJ looked at the prior medical evidence that was before the ALJ at the first hearing. In addition, he noted that subsequent to remand, plaintiff was assessed by Thomas W. Keaveney, M.D., and J. Keith Ostien, Ph.D., and that both doctors did not note any abnormalities of such degree that would preclude plaintiff from working. Further, the ALJ considered Dr. Mondejar's assessment, but found that it did not have a realistic basis because it was not in accordance with the vast weight of the evidence. Given the evidence in the case, and the testimony of the vocational expert, the ALJ determined that there were a significant number of jobs in the national economy which plaintiff could perform, including restaurant cashier, video clerk, self-service gas station attendant, telephone order clerk, and telephone solicitor. Thus, he determined that plaintiff was not disabled.

Legal Standards
A claimant for social security disability benefits must demonstrate that he suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 416.905(a).
To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f)(1993). Those steps require a claimant to show: (1) that he is not engaged in substantial gainful activity; (2) that he has a medically severe impairment which precludes engaging in substantial gainful activity; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix; (4) he is unable to return to his past relevant work; and (5) he is unable to engage in other positions which exist in significant numbers in the national economy.
The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence `is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir.1993)). The Court does not reweigh the evidence or review the record de novo. Id. (citation omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id.; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir.1996).
To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and *1094 consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health and Human Servs., 957 F.2d 581, 585-586 (8th Cir.1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir.1980).
The ALJ may discount plaintiffs subjective complaints of pain if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir.1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Id.; Ricketts v. Secretary of Health and Human Servs., 902 F.2d 661, 664 (8th Cir.1990).
When a plaintiff claims that the ALJ failed to properly consider subjective complaints of pain, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints of pain under the Polaski standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987).
Pain alone may be disabling within the meaning of the Social Security Act if it is supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to cause pain. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984)(listing factors to consider when evaluating subjective complaints of pain).[3] However, if inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir.1995).

Discussion
Plaintiff claims that the ALJ did not give the proper weight to plaintiff's subjective complaints of pain. The ALJ determined that plaintiff's complaints were not credible. In doing so, he noted that the medical evidence did not support plaintiffs claims. Additionally, the ALJ relied upon the prior determination which took into account the Polaski factors including plaintiff's daily activities, medications, frequency and intensity of symptoms including pain, precipitating factors, and functional restrictions. (Tr. 13) Plaintiff testified in the first hearing that she was able to do household chores and shop on "good" days. (Tr. 41-42) Although she claimed later to be unable to do anything, she did testify to occasional dusting, making the bed, taking out the trash, walking the dog around the block, attending church once or twice a week, and visiting her sister. (Tr. 248-51) Further, she did not claim to experience any adverse side effects from any medication.
Where the ALJ explicitly discredits the plaintiff's testimony and gives good reason *1095 for so doing, the court will defer to that judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir.2001) (citation omitted). Here, the ALJ noted that under the Polaski factors, plaintiff's subjective complaints of disabling pain were not credible. Review of the record shows that there is good reason to defer to the ALJ in this case. Plaintiff complained to her primary physicians of minor illnesses, including colds and infections. These ailments were treated with medication. None of the medical records demonstrate that plaintiff suffers from a disability. Although Drs. Samuel and Mondejar opined that plaintiff had low physical capacity, their medical records do not show any objective basis for this conclusion. Indeed, Dr. Mondejar's basis for plaintiff's incapacity for work was the fact that plaintiff subjectively complained of pain in her hands. (Tr. 326) Dr. Samuels also based his opinion on the fact that plaintiff experienced variable blood sugar levels and she did not feel like going to work. (Tr. 136, 175-76) "Although the opinion of a treating physician is entitled to great weight, ... such an opinion is not conclusive and must be supported by medically acceptable clinical or diagnostic data." Wilson v. Chater, 76 F.3d 238, 241 (8th Cir.1996) (citations omitted). Further, "where the treating physician's opinions are themselves inconsistent, they should be accorded less deference." Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir.1996) (citations omitted). Here, the clinical data does not support the opinion that plaintiff cannot work.
To the contrary, Dr. Ramirez acknowledged plaintiff's complaints of "blackouts" but further noted that she should be able to work. (Tr. 156-157) Dr. Ostien believed that from a mental standpoint, plaintiff would benefit from Michigan Rehabilitation Services in order to find a job. (Tr. 334) Dr. Keaveney found that plaintiff was basically unrestricted but should not work at heights and around heavy machinery. (Tr. 342) These opinions, in addition to the medical evidence submitted by plaintiff's treating physicians which show only minor illnesses, demonstrate that plaintiff is able to work.
Further, the record shows that she is able to perform some daily activities, which is inconsistent with her allegations of pain. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998) (upholding ALJ's finding that plaintiff's complaints of pain were not credible due to her ability to engage in daily activities including household work, visiting friends, and attending church). Thus, the ALJ did not err in discrediting the plaintiff's allegations.
Next, plaintiff asserts that the ALJ erred by not insuring that the defendant met its burden of setting forth jobs plaintiff could perform. To the contrary, while the ALJ used the guidelines as a framework, he also acknowledged the fact that plaintiff had non-exertional impairments, and he utilized a vocational expert. Further, the ALJ's hypothetical question to the vocational expert was proper. "An ALJ's hypothetical question must fully describe a claimant's impairments." Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir.1995). The hypothetical "need `include only those impairments that the ALJ finds are substantially supported by the record as a whole.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996).
The VE stated that, given her impairments, there were a variety of jobs she could perform in the national economy that would accommodate her functional restrictions as well as her need for low-stress jobs. Due to her non-exertional impairments, the ALJ was required to rely on the VE's testimony in determining whether or not plaintiff was disabled. Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir.1998). In his determination, the ALJ cited those jobs set forth by the VE as jobs in the *1096 national economy which plaintiff could perform. (Tr. 207) Therefore, the ALJ met his burden, and plaintiff's point of error is denied.
Plaintiff additionally claims that the ALJ failed to properly evaluate plaintiffs physical or mental impairments and their combined effects on her residual functional capacity. However, the ALJ did take into account plaintiff's mental impairments and her physical impairments that he found credible. In determining plaintiff's residual functional capacity, the ALJ compensated for her impairments by including restrictions that plaintiff avoid working around heights and dangerous machinery in his residual functional capacity assessment and his question to the VE. He also found that plaintiff could not perform prolonged walking or standing, lifting more than 10 pounds, or repetitively using the hands. (Tr. 208)
Furthermore, the ALJ took into account plaintiff's non-exertional impairments of borderline intellectual functioning, somatoform disorder, and dependent personality disorder, noting that her work should be low stress to account for these deficits. In addition, the ALJ properly filled out the Psychiatric Review Technique Form which must be completed when the plaintiff alleges that she suffers from a mental impairment. Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir.2001); (Tr. 210 -13). Plaintiff's argument that the ALJ erred in assessing plaintiff's residual functional capacity must therefore fail.
Because substantial evidence on the record as a whole supports the decision of the Commissioner, that decision should be affirmed.[4]
Accordingly,
IT IS HEREBY ORDERED that the final decision of the Commissioner denying social security benefits is AFFIRMED. A separate Judgment shall accompany this Memorandum and Order.
NOTES
[1] William A. Halter became the Acting Commissioner of Social Security on January 20, 2001. Pursuant to Rule 25(d)(I) of the Federal Rules of Civil Procedure, his name should be substituted for former Commissioner Kenneth S. Apfel as the defendant in this matter.
[2] Plaintiff claims that a notation on the side of this report (Tr. 342) states that plaintiff should not work due to possible hypoglycemic episodes. It appears to the undersigned, however, that the doctor continued this sentence under part B, in which case the sentence would read that she should not work with heights or heavy machinery. This interpretation fits better within the overall assessment by Dr. Keaveney.
[3] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimant's functional restrictions. Polaski, 739 F.2d at 1322.
[4] Plaintiff also argues that the Appeals Counsel should have allowed her to untimely file her exceptions. Her attorney cites reasons for not filing on time. However, because the undersigned addressed the merits of plaintiff's claims, it is unnecessary to address plaintiff's "failure to prosecute" arguments.